# POTTER *v.* HALL.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 168. Submitted February 24, 1903.—Decided April 6, 1903.

*Smith* v. *Townsend,* 148 U. S. 490; *Payne* v. *Robinson,* 169 U. S. 323, and *Calhoun* v. *Violet,* 173 U. S. 60, decided only that one who, in violation of law, was within the territory in Oklahoma opened for settlement under the act of March 2, 1889, and the President's proclamation executing · the same at the moment of time when the race for land began, was disqualified from entering land. In those cases the question was reserved whether one was disqualified because he had been in the territory prior to the time fixed for its opening, but had retired from the territory and on the day of the opening had made the race for land on an equality with others. *Held,* therefore, that the court below erred in treating the cases in question as decisive of the question which they reserved.

The Land Department charged with the execution of the statute having in many rulings held that prior entry did not disqualify provided the one who had so entered had returned and taken part in the race with the others, unless the prior entry conferred some manifest advantage, which would not otherwise have been possessed, *Held,* that as this construction of the statute was in accord with the spirit and intent of the act it should not be disregarded by the courts upon the ground that it was in conflict with the mere letter of the statute.

The ruling of the Land Department in this particular case that the prior going into the prohibited territory by an entryman who had retired and taken part in the race on an equality with others did not disqualify the entryman, because the prior entry had given him no particular advantage which he would not otherwise have possessed, *Held,* to be a finding of fact not reviewable by the courts.

This case involves conflicting claims to a tract of land in Oklahoma. Potter, the appellant, who was plaintiff below, claiming to be the owner by title derived under the homestead laws of the United States, sued to recover the property. Mrs. Hall, the appellee, the defendant below, by answer and cross petition averred that herself and husband, being duly qualified to enter the land under the homestead laws, were the first to enter upon and occupy it in the year 1889, when it was opened for settlement, and that they had resided on it as their homestead up to the time of the death of the husband, and she thereafter had

continued to reside on it as a homestead up to the bringing of
the suit.   It was alleged that Potter, claiming that he had duly
entered upon the land, contested the right of Hall to make entry
thereof, on the ground that Hall did not possess the requisite
qualifications and had abandoned the land, and that Hall, on
the other hand, had contested the right of Potter on the ground
that he had unlawfully entered upon the land prior to the time
when it was open for settlement in violation of the act of 1889
and the proclamation of the President carrying out the provi-
sions of that act.   It was, moreover, alleged that the result of
these contests was a recommendation by the local land officers
that Hall's application be approved and that Potter's be re-
jected.   A copy of the report of the register and receiver was
made a part of the cross petition.. It was then averred that the
Secretary of the Interior, in reviewing the action of the Com-
missioner of the General Land Office, passing on the recom-
mendation of the register and receiver, had approved the find-
ing of the local officers, but that subsequently the Acting
Secretary had reviewed the previous decision of the Secretary,
had rejected the claim of Hall and sustained the right of Potter,
and that the patent of the United States had issued to Potter
in consequence of such decision.   The opinion of the Secretary
on the first hearing and that on the second were also made part
of the cross petition.   Charging that the decision of the Secre-
tary in favor of Potter involved error of law reviewable by the
court, the prayer of the cross petitioner was that, as the widow
of Hall, she be recognized as entitled to make entry of the land ;
that Potter be adjudged to hold the land under the patent of
the United States for her benefit, and that a decree be awarded
directing a conveyance.   To the cross petition Potter demurred
on the ground of no cause of action.   The demurrer having
been overruled, and Potter declining to plead further, a decree
was entered in favor of the defendant Hall, adjudging the land
to her and decreeing a conveyance.   The Supreme Court of the
Territory affirmed the decree.   11 Oklahoma, 173.

The material facts found by the Land Department are these :
Potter entered on the land the 22d of April, 1889, the day upon
which it was open for settlement, and continuously maintained

his residence thereon. Hall first entered upon a part of the land about six months after, that is, in October, 1889. The facts concerning Potter's entry were stated by the Secretary in his opinion on the first hearing as follows:

" The history of the case and the material facts are set out in the decision appealed from and need not be restated in detail. The tract in question formed a part of the lands in Oklahoma which were opened to settlement at noon on April 22, 1889; shortly before this date Potter had been appointed by the Indian agent of the Cheyenne and Arapahoe agency as assistant chief of police, with instructions to proceed to the east line of the reservation, preserve order and prevent any settlement on the same. The east line of the Cheyenne and Arapahoe reservation is also the west line of the lands opened for settlement as aforesaid, and is within possibly a quarter of a mile from the tract in question. On this morning of April 22, 1889, some three or four hours before the hour of noon, Potter, who it seems was at said line, seeing some freighters camped on the land involved, went thereon to order them off; he then returned to the line, and (at) the hour of noon started in the race for a claim; he reached the land before any of his competitors, and, as he states, commenced his settlement at one half or one minute after twelve o'clock."

The deduction which the Secretary drew from these facts was thus stated by him:

" In my opinion the facts just stated sustain the conclusion reached by the local officers to the effect that Potter was not qualified to enter the tract in question by going into the territory on the morning of April 22, 1889, before the hour when the lands therein were opened to settlement; he necessarily secured an opportunity to observe the various tracts lying near the line and the ways of reaching them, and this taken in connection with the fact that at the said hour he went directly from the line to the land in question makes it plain in my mind that if he did not previously select the tract of land in dispute, he obtained information that gave him an advantage over rival claim seekers. It follows under the prevailing rulings, *Dean* v. *Simmons*, 17 L. D. 526, and cases cited, that

Potter is not qualified to make entry of land in Oklahoma, and that his application to enter the tract in question must be rejected."

The Acting Secretary, when he came to consider the case on a rehearing or review, whilst accepting the facts concerning Potter's entry as stated in the previous opinion, drew from them a different conclusion from that which had previously been deduced. He said :'

" Accepting this statement as correct, and a reëxamination of the record satisfies me of its correctness so far as it goes, I scarcely think the conclusion warranted that he necessarily secured an opportunity to observe the various tracts of land lying near the land and the way of reaching them, so that he obtained information that gave him an advantage over rival claim seekers. He had been employed at the Cheyenne and Arapahoe agency near by since 1883, and for six years before the opening of the country to settlement he had lived in close proximity to the land in dispute. He had nothing to gain or to learn. Therefore, by the short excursion with which he is charged, and which it cannot be denied, was made in the performance of duty devolved upon him by the orders of the agent who appointed him to the command of the police at that point, he neither gained nor sought advantage, and it was error to hold that under the circumstances of entry into the territory he was disqualified thereby."

*Mr. J. W. Shartel* and *Mr. J. H. Everest* for appellant.

*Mr. Charles P. Lincoln* and *Mr. Mark D. Libby* for appellee.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The Supreme Court of the Territory disregarded the final action of the Land Department as expressed in the opinion of the Acting Secretary on the rehearing, and decreed that Potter held the land in trust for the defendant and appellee on two

grounds: First, because the final action of the department was held. to be a violation of the provisions of the law opening the land in question to settlement; and, second, because, as stated by the court, " We feel less hesitation in reversing the conclusion of the last tribunal of the Land Department 'on review,' not only because the conclusion we now arrive at is that *which must necessarily be arrived at upon the facts*, (italics ours,) but also because it was the one accepted by the Secretary of the Interior, as well as the Commissioner of the General Land Office." The conclusion of the court, that the final action of the Land Department was contrary to law, was rested upon what was deemed to be the controlling effect of the rulings in *Smith* v. *Townsend*, 148 U. S. 490; *Payne* v. *Robertson*, 169 U. S. 323, and *Calhoun* v. *Violet*, 173 U. S. 60. But the decisions relied upon do not sustain the conclusion which the court deduced from them. In all three of the cases the only question decided was the validity of an entry made by one who was within the inhibited territory at. the time when the land was opened by law for settlement. The cases therefore did not involve whether one who was outside of the territory at the moment of time when the land was opened, lost his right to take part in the race into the territory because at a time previous to that moment, he had been within the territory in question. Indeed, not only was the question which this case presents not embraced within the decisions upon which the court below based its conclusion, but it was expressly excluded from the rulings made in the cases in question. Thus, in *Smith* v. *Townsend*, in referring to the statute and the President's proclamation opening the land for settlement, it was said in the concluding passage of the opinion (p. 501):

" It may be said that if this literal and comprehensive meaning is given to these words, it would follow that any one who, after March 2 and before April 22, should chance to step within the limits of the territory would be forever disqualified from taking a homestead therein. Doubtless he would be within the letter of the statute; but if at the hour of noon on April 22, when the legal barrier was by the President destroyed, he was in fact outside of the limits of the territory, it may perhaps be

said that if within the letter he was not within the spirit of the law, and, therefore, not disqualified from taking a homestead. Be that as it may—and it will be time enough to consider that question when it is presented—it is enough now to hold that one who was within the territorial limits at the hour of noon, April 22, was, within both the letter and the spirit of the statute, disqualified to take a homestead therein."

The court below having then erroneously held that the case was controlled by the previous adjudications of this court, we are called upon to determine the question which was expressly reserved in *Smith* v. *Townsend*, that is, whether one who was outside of the legal barrier at twelve o'clock M. on April 22, the day and time when that barrier was removed by operation of law and the terms of the proclamation of the President, was disqualified from participating in the race for the land because prior to that date and within the prohibited period he had been within the territory which was thereafter to be opened for settlement. The statutes and proclamation of the President by which this question is controlled were fully set out in *Smith* v. *Townsend, supra*, and need not be at length restated. Suffice it to say, that the provisions opening the land for settlement, regulating the mode of settlement and the President's proclamation executing these statutes, are found in the act of March 1, 1889, 25 Stat. 757, the act of March 2, 1889, 25 Stat. 980 and 1005, and the proclamation of the President of March 22, 1889, 26 Stat. 1546. The first of these acts contained the provision that "any person who may enter upon any part of said lands in said agreement mentioned prior to the time that the same are opened to settlement by act of Congress shall not be permitted to occupy or to make entry of such lands or lay any claim thereto." The act of the subsequent day (March 2, 1889) contained the following provision :

" But until said lands are opened for settlement by proclamation of the President, no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said lands or acquire any right thereto."

The proclamation of the President contained these words :

"Warning is hereby again expressly given, that no person entering upon and occupying said lands before said hour of twelve o'clock, noon, of the twenty-second day of April, A. D. eighteen hundred and eighty-nine, hereinbefore fixed, will ever be permitted to enter any of said lands or acquire any rights thereto."

Doubtless, as observed in *Smith* v. *Townsend*, a rigorous adherence to the mere letter of these statutes and the terms of the proclamation would exclude every person from the right to enter and occupy land within the prohibited territory, even although such person was outside of the territory, and therefore on an equality with all others if perchance such persons had accidentally or otherwise gone into the prohibited territory between the second day of March and the twenty-second day of April. But it is also true that if the provisions of the statute and proclamation be enforced, not according to their mere letter, but in harmony with the intention which may be fairly deduced from them, a contrary rule would result. Whilst, as held in *Smith* v. *Townsend* and the cases referred to which have followed it, obviously the purpose of the statute was to exclude any one from entering land who was within the territory at the period fixed for the opening, it may well be doubted whether the words " enter upon and occupy," as used in the act of 1889 and in the President's proclamation, embrace the mere accidental or casual presence in the prohibited territory subsequent to the 2d of March and prior to the 22d of April of one who was outside on the 22d of April, and therefore in a position of substantial equality with others seeking to make the race for the land.

The Land Department, charged with the execution of the act, was early called upon to determine whether one who was outside of the territory at the time of the opening, and took part in the race for land was disqualified because, subsequent to the second of March, and before the opening, he had been within the limits. In the case referred to the entryman had, on the 20th of April, crossed the line accidentally and gone two miles into the territory, but on being informed of the fact, had retired and waited with others on the line until the 22d, the day

of opening. After considering the terms of the statute the conclusion was reached that an entry of this kind was not within the spirit of the prohibition of the statute, and the entry was confirmed. *Donnell* v. *Kittrell*, (1892) 15 L. D. 580. This ruling was followed in *Higgins* v. *Adams*, 18 L. D. 598, where it was held that one who had gone into the disputed territory on the morning of the day of the opening for the purpose of watering his team, and who, on completing this object, had returned to the boundary and made a start with the others, did not come within the spirit of the statute. In *Curnutt* v. *Jones*, 21 L. D. 40, (1895) the whole subject was elaborately reviewed and many prior cases referred to. Briefly the facts in the case were these: The entryman had resided for several years in the vicinage of the prohibited territory, and had habitually entered therein for the purpose of getting his mail. On the day, however, of the opening he was at the line with others and took part in the race for land. It was held that the prior entry did not deprive him of the right to enter land; that whether entry prior to the day of the opening affected the right to make entry would depend upon the facts of each particular case, and upon whether, in considering them, it was concluded that the prior entry placed the one who had made it in such a position of advantage over others as to render it unjust and inequitable to allow him to make an entry of land. In summing up the case Mr. Secretary Smith, in his opinion, said:

" Jones, the defendant in this case, had lived for some time on the border of the territory, within less than a mile from the line, and almost from the necessity of his situation was familiar with the lands in the immediate vicinity. His information respecting them, and particularly respecting the tract subsequently entered by him, is shown to have been acquired long prior to March 2, 1889, and as was well said in the case of *Golden* v. *Cole's Heirs*, *supra*, ' it was impossible to deprive people who had been over the territory of the knowledge they had thus acquired.' His periodical visits to Oklahoma City, which was at once his post office, his most convenient and accessible railway station, and his market town, do not appear to have brought him any advantage over other persons seeking lands in the territory."

In *Tipton* v. *Maloney*, 23 L. D. 186, (1896) it was held that one who within the prohibited period had passed along the highways in the territory was not disqualified for making an entry, provided he was outside of the line on the day of the opening and took part on an equality with others in the effort to secure land. And rulings to the like effect were made in *Hensley* v. *Waner*, 24 L. D. 92, and *Henderson* v. *Smith*, 28 L. D. 303. The settled rule then applied by the Land Department in the execution of the statute is that one who took part in the race for land on the day of the opening was not prohibited from taking land because of a prior entry into the territory unless it be shown that manifest advantage resulted to the entryman from his previous going into the territory. The rule thus for a long period and consistently enforced must obviously have become the foundation of many rights of property. And as we consider that the rule thus applied in the practical administration of the statute by the officials by law charged with its execution conforms to its intention, we are unwilling to overthrow it by a resort to a narrow and technical construction. It remains only to consider whether error was committed by the department in finally ruling that the entry made by Potter on the morning of the 22d, before he returned to the line to take part in the race, involved error of law reviewable by the courts. But as such entry did not, as a matter of law, preclude Potter's right to go outside of the territory and take part in the race for land, but depended upon whether, as a matter of fact, he obtained by his previous going into the territory a substantial advantage over others, which he would not have otherwise possessed, it follows that the final conclusion of the department that no such advantage resulted, involved but the finding of an ultimate fact and not a conclusion of law, and it is, therefore, not reviewable. If the facts found by the Secretary had no tendency to sustain the conclusion reached by him it might be that a question of law would arise, but such is not the case. Indeed, in view of the finding that Potter had been for a long period of time living across the line in close proximity to the land which he entered, and which was only a quarter of a mile distant from the place where the

race began, and that he reached the land in two minutes from the time when the start was made, it might well be argued that his going into the territory, as stated, had no tendency to establish that he obtained an advantage by reason of acquiring information which he had not previously possessed. But so to say would lead only to the conclusion that as a matter of law the department rightly held that Potter was a qualified entryman. The fact that the final conclusion as to the ultimate facts reached by the department differed from the conception of such ultimate facts entertained by the department in previous stages of the controversy, affords no ground for disregarding the conclusion of ultimate fact finally reached, which was binding between the parties.

*The judgment of the Supreme Court of the Territory must be reversed, and the cause remanded for further proceedings in accordance with this opinion.*