## GREENAMEYER *v.* COATE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 100. Submitted January 4, 1909.—Decided February 23, 1909.

When the Secretary of the Interior has jurisdiction of a land contest and grants a rehearing he is not, nor is this court, bound by the facts found by his predecessor on the original hearing, *Potter* v. *Hall,* 189 U. S. 292; after such a rehearing and when, as in this case, new testimony is allowed, the decision then made is the ultimate action of the department.

The holder of a patent obtained by error of law of, or fraud or imposition on, the Land Department, may be declared to hold the same as trustee for another; but the fraud must have been so practiced as to have prevented the unsuccessful party from fully exhibiting his case, and if the case has been fully considered the decision of the proper officers is in the nature of a judicial determination. *Vance* v. *Burbank*, 101 U. S. 514.

18 Oklahoma, 160, affirmed.

APPELLANT and appellee were respectively plaintiff and defendant in the courts below, and we shall so designate them.

Plaintiff brought this suit in the District Court of Kay County, Oklahoma, to be declared the owner of the legal title to lots 1 and 2 and the E. ½ of the N. W. ¼, section 18, township 26 N., R. 2 E., Indian Meridian, and to require a conveyance of the land to him by defendant. A demurrer to the petition was sustained and a judgment entered dismissing the suit, which was affirmed by the Supreme Court of the Territory.

The petition shows the following facts: August 9, 1893, a portion of the Territory, known as the Cherokee Outlet, was opened for settlement. The plaintiff complied with the terms of the proclamation of the President of the United States, and, having served as a soldier during the war of the rebellion for a period of two years, and being otherwise qualified, filed in the United States land office at Perry, Oklahoma, a soldier's declaratory statement for the land. On the eighth of March, 1894, he duly transmitted his declaratory statement into homestead entry No. 5588, for the same premises, moved a house upon and took up his residence upon them, and continuously lived thereon with his family from such time for seven years, cultivated 40 acres thereof, "cropped the same, and grazed 40 acres in addition," and erected improvements of the value of $450. That after such residence and cultivation he made application in due form to make final proof, which offer was rejected.

On November 24, 1893, the defendant made homestead entry No. 4447 upon the land, subject to plaintiff's soldier's

declaratory statement, and on the fourth of March, 1904, filed
a contest affidavit in the land office at Perry, alleging settle-
ment three days prior to such declaratory statement.

The contest came on for hearing before the local land office
and that office decided in favor of defendant. This decision
was reversed by the Commissioner of the General Land Office,
and, on appeal to the Secretary of the Interior, by that officer.
Their opinions and judgments are attached to the petition.

A petition for review being filed by defendant, a rehearing
was ordered and the matter remanded to the local land office
for further hearing upon questions of fact, but the petition
for review was denied. The opinion of the Secretary is at-
tached to the petition. The matter was duly heard by the
local office, which office recommended adversely to plaintiff.
The decision was affirmed by the Commissioner, and the home-
stead entry of plaintiff "held for cancellation, subject to the
right of appeal." An appeal was taken to the Secretary of the
Interior on July 3, 1900, and that officer reversed the depart-
mental decision of June 21, 1898, in favor of plaintiff, affirmed
the ruling of the local land office against him, and cancelled
his entry.

Plaintiff filed a petition for review, which was denied, and
the case was finally closed, the entry of defendant "reinstated,
and his rights in and to said tracts were held to be both prior
and superior to those of this plaintiff."

Defendant submitted his final proofs, and prior to the com-
mencement of the suit obtained a patent conveying to him the
tract in question, and holds the legal title thereto.

The petition alleges the superiority of plaintiff's right to
defendant's right, and that by a proper application of the
law to the facts as proved in said cause and found by the de-
cisions of the land office the claim of the plaintiff "should have
been finally held prior and superior to the claim of said defend-
ant, and the patent conveying title to said tract should and
would have been made and delivered" to plaintiff. The mis-
application of the law, plaintiff alleges, consisted in the dif-

ferent conclusion drawn from the facts in the decision of July 3, 1900, in which the improvements put upon the land by defendant were declared sufficient, from that deduced in the decision of June 11, 1898, in which the improvements were decided to be insufficient to initiate a valid right of settlement. The last opinion is quoted from as follows:

"After a thorough examination of the testimony, the department is of the opinion that the acts of Coate were insufficient to hold the land against the soldier's declaratory filing of Greenameyer.

"If it should be conceded that everything claimed to have been done by Coate in the way of settlement were true, his said acts would not, in the judgment of this department, constitute him a *bona fide* settler prior to the 19th day of September, 1893, when the defendant made his declaratory statement of record."

And it is alleged that defendant—

"Coate reached the land between one and two o'clock on the afternoon of the opening and remained on or adjacent to the claim until the 20th, four days. All that he did in these four days was to stick his flag and dig a hole which he calls a starting of a well, two feet deep and two and a half or three feet across. He then left and went back to his home in Kansas, 150 miles distant. The digging of this hole would not require more than an hour's labor by one man. This was all he did between the 16th and 20th, while he remained on or near this claim, to his return to Kansas, the rest of his time he spent 'watching people off' of the claim and in going to Newkirk on the 19th to 'file by mail.' He did not return to the claim after leaving on the 20th of September until the 22d of October, and his return at that time was due to the fact that he received a letter from one White, stating a soldier had filed on the land."

It is alleged that the two decisions were made upon "precisely the same state of facts;" that the decision of June 21, 1898, and October 5, 1898, correctly applied the law, and that of July 3, 1900, reversing the prior decisions, misapplied the law.

For a second cause of action plaintiff alleged the foregoing facts, and further alleged that fraud and deceit were practiced upon the land office by defendant, which caused the defeat of plaintiff in the litigation, and that by cunning and deceit defendant so concealed his fraudulent practices from plaintiff that the latter was unable to procure evidence to prove the fraud in the contest suit. That about the first of December, 1893, the plaintiff learned that defendant was the owner of and in possession of 160 acres of land in Morris County, Kansas; that he obtained an abstract of the "registry records" of Morris County, which showed that defendant was owner of 180 acres of land, and July 9, 1894, he further learned that in January of that year defendant had fraudulently placed on record a deed for the land to his son-in-law, to enable defendant to make proof before the Land Department, and that plaintiff was unable to obtain proof thereof in time to use in said contest. That the nature of defendant's fraud was such that he could and did conceal it from plaintiff and the Land Department; that the deed, while it was executed upon the twenty-seventh of January, 1894, was antedated so as to appear to have been made August 30, 1893, and that by these fraudulent means defendant caused it to appear that he had sold and conveyed the land on the thirtieth of August, 1893, whereas he continued to own the same until January, 1894, and was therefore disqualified from taking and holding any interest in the land involved in the action. And it is alleged that defendant introduced in evidence in the contest cause a certified copy or statement from the records of Morris County, in order to deceive the Land Department and defraud plaintiff, and to establish that defendant had the necessary qualifications to make entry and settlement upon the land.

It is alleged that plaintiff has but recently discovered the "evidence to prove the foregoing charge of fraud, concealment and imposition, and is now able to prove the facts as to both as set forth." Other facts will appear in the opinion.

*Mr. John W. Adams, Mr. Kos Harris* and *Mr. William E. Keith,* for appellant:

A party by acquiescing in, or acknowledging the title of another, or standing by and seeing another making costly improvements or recognizing a claim or lien of another, is estopped from subsequently disputing its validity. 2 Herman on Estoppel, § 1069; *Broyles* v. *Nowlin,* 59 Tennessee, 191; *Moale* v. *Baltimore,* 56 Maryland, 496; *Hart* v. *Huguet,* 33 La. Ann. 362; *Betts* v. *Worth,* 32 N. J. Eq. 32.

Coate could have had no right to a patent, if he had not filed thereon in the manner provided by the statute. It was, therefore, a misapplication of the law to receive or consider proof denying the soldier's preference right, once solemnly recognized in the very filing made by Coate, without which he could have no right under the facts in the contest case.

The allegations of the petition present such a case of fraud, cunning and deceit as will warrant a court of equity to grant relief. *Johnson* v. *Towsley,* 13 Wall. 72, 86; *Vance* v. *Burbank,* 101 U. S. 514; *Craig* v. *Leitensdorfer,* 123 U. S. 212; *Gonzales* v. *French,* 164 U. S. 342; *Quimbie* v. *Conlan,* 104 U. S. 425; *Lytle* v. *Arkansas,* 22 How. 203; *Calhoun* v. *Violet,* 173 U. S. 63.

The legal title has passed from the Government, and the plaintiff could not obtain any relief in the Land Department, but in cases of this kind, where a patent has been wrongfully or fraudulently obtained, equity will treat the fraudulent patentee as a trustee for the party against whose rights the fraud has operated and decree a transfer of the legal title to the party who, but for the wrong or fraud, would have received the title. *In re Emblem,* 161 U. S. 52; *Johnson* v. *Towsley,* 13 Wall. 72; *Moore* v. *Robbins,* 96 U. S. 530; *Marquez* v. *Frisbie,* 101 U. S. 473; *St. Louis Smelt. & Refining Co.* v. *Kemp,* 104 U. S. 636; *Steel* v. *St. Louis Smelting Co.,* 106 U. S. 447; *Monroe Cattle Co.* v. *Becker,* 147 U. S. 47; *Turner* v. *Sawyer,* 150 U. S. 578; *Emblem* v. *Lincoln Land Co.,* 184 U. S. 659.

*Mr. W. S. Cline* and *Mr. C. L. Pinkham* for appellee:

The question of what are sufficient acts of good faith on the part of one settling upon government land, and what particular acts are sufficient evidence of the continuance of an original act of settlement which segregates the tract settled upon, must necessarily vary with the varying circumstances of each particular case, and the determination of such question must be left to the judgment of those tribunals which are established for the purpose of disposing of the public land; and when such tribunals determine in good faith that the law has been complied with in a particular case, their determination is final. *Moore* v. *Robbins,* 96 U. S. 530; *Marquez* v. *Frisbie,* 101 U. S. 473; *Burfenning* v. *C., St. P., M. & O. Ry. Co.,* 163 U. S. 323; *Vance* v. *Burbank,* 101 U. S. 514; *Quinby* v. *Conlan,* 104 U. S. 420; *Steel* v. *Smelting Co.,* 106 U. S. 447; *Baldwin* v. *Starks,* 107 U. S. 463; *De Cambra* v. *Rogers,* 189 U. S. 119.

If there is any evidence which tends, in any degree, however slight, to support the conclusion of the Secretary as announced in his opinion, then such conclusions become final, and a court of equity will not interfere.

The findings of Secretary Bliss were not ultimate findings of fact in said contest proceedings. While said contest proceeding was pending before the department, the Secretary of the Interior granted the petition for rehearing of the defendant, and after a retrial of the contest case, and on the facts adduced on the retrial of said contest it was found by the land tribunal that the defendant was entitled to the land.

The department merely reconsidered a question passed upon in the progress of the cause. The findings of Secretary Hitchcock became and are the findings of ultimate facts, finally reached in said contest. See *Potter* v. *Hall,* 189 U. S. 292.

As to the contention of appellant that fraud and imposition were practiced upon him and upon the Land Department, the appellant has not brought himself within the rule under which courts of equity will grant relief. *Vance* v. *Burbank,* 101 U. S. 514; *De Cambra* v. *Rogers,* 189 U. S. 119; *United States* v.

*Throckmorton,* 98 U. S. 65; *Friese* v. *Hummel et al.,* 37 Pac.
Rep. 458; *Estes* v. *Timmons,* 12 Oklahoma, 537; *S. C.,* 73 Pac.
Rep. 303.

The fraud practiced which is sufficient to set aside the final
judgment is one that arises extrinsically, that prevents a party
from having a fair trial, or having any trial for the develop-
ment of the facts, and not a case where a full, fair and free
trial is had or tendered, wherein the person alleged to have
been defrauded was present in person and by attorney, and
heard and saw what is alleged to have been the perpetration
of a fraud, and had then and there the opportunity to refute
it, which he failed to do, or, believing himself to have success-
fully done it, submits his cause for final determination. In
such case, the conclusion reached is final. See *Hass* v. *Billings*
(Minn.), 43 N. W. Rep. 797, affirmed, *Wilkins* v. *Sherwood,* 56
N. W. Rep. 591; *Gray* v. *Barton* (Mich.), 23 N. W. Rep. 813;
*Lee* v. *Johnson,* 116 U. S. 48; *Cothausen* v. *Kerting* (C. C.), 29
Fed. Rep. 821; *Friese* v. *Hummel* (Ore.), 37 Pac. Rep. 458.

Mr. Justice McKenna, after stating the case as above, de-
livered the opinion of the court.

The case presents apparently contradictory decision between
two Secretaries of the Interior and plaintiff contends upon the
same set of facts. But this contention is not sustained by the
record. The first decision of the local office was adverse to
the plaintiff, but the decision was reversed by the Interior
Department, the Commissioner and the Secretary of the In-
terior taking a different view of the facts from that taken by
the local land office. But a rehearing was granted, and while
in the opinion granting it the Secretary repeated his view of
the facts, further testimony was allowed to be introduced.
Further testimony was introduced, and the local office found
that, while it was conflicting—

"the preponderance of it showed: First. That the contestant
settled on the land in controversy on the afternoon of Septem-

ber 16, 1893; that he put up a flag and commenced a well; that he remained thereon until the 20th of September, 1893; that he returned in October, 1893, and built a small house, put up a few trees and had some breaking done; that he again went to Kansas in November, 1893, and remained there until February, 1894, when he again returned to the land in controversy and built a large and better house; that he has resided [upon], improved and cultivated part of the said land from that time to the present; that he has substantially complied with all the requirements of the homestead law.

"Second. We find that his absence from the land from November, 1893, to February, 1894, was excusable because of his financial and physical condition.

*     *     *     *     *     *     *     *

" Fourth. We find that there was no fraud in conveying the land formerly owned by the contestant to his son-in-law some months before the opening of the country to settlement.

"Fifth. That the settlement rights of the contestant were commenced before the defendant filed his soldier's declaratory statement, and that the said rights so acquired have been followed up as required by law."

The office recommended that the entry of the defendant "be permitted to stand." The finding and decision were successively affirmed by the Commissioner of the General Land Office and the Secretary of the Interior, in an elaborate opinion, in which the testimony was quoted and commented upon. And to these decisions we must look as the ultimate action of the Department. It is of no legal consequence that different views were expressed in other decisions. It is not contended that Secretary Hitchcock, when he rendered the last decision, did not have complete jurisdiction of the case. It seems to be contended that he was bound by the facts found by his predecessor, Mr. Bliss, and that this court is likewise so bound. The contention is untenable. *Potter* v. *Hall*, 189 U. S. 292. In that case it was said:

"The fact that the final conclusion as to the ultimate facts

reached by the Department differed from the conception of such ultimate facts entertained by the Department in previous stages of the controversy, affords no ground for disregarding the conclusion of ultimate fact finally reached, which was binding between the parties."

But besides, as we have seen, additional testimony was taken. It was upon that testimony, as well as upon that which was before Secretary Bliss, that the decision of Secretary Hitchcock was based. It is true the petition alleges that such decision was made upon "precisely the same state of facts" as that of Secretary Bliss, but the allegation is contradicted by the exhibits which are attached to the petition and expressly made part thereof.

The contentions upon which plaintiff bases his second cause of action are equally without merit. The issue of fraud which plaintiff made upon the ownership of land in Kansas and the conveyance thereof to his son-in-law was passed on by the Land Department and decided adversely to plaintiff. There was evidence other than copies of the record. The integrity of the deed by the defendant to his son-in-law was challenged. The evidence is not recited in the opinion of the local land office. It is recited in the opinion of Secretary Hitchcock, and it tended to show that the deed was a consummation of transactions between defendant and his son-in-law which established its validity, and which were inconsistent with the supposition of its having been antedated. However, the issue was met and decided upon testimony submitted, and no fact is alleged which supports the statement that plaintiff was prevented from exhibiting his whole case. He had certainly plenty of time for preparation. The land was opened to settlement September 3, 1893. On the nineteenth of that month plaintiff filed his soldier's declaratory statement upon the land. Defendant made his homestead entry November 24, 1893, and on the twenty-eighth of March, 1894, instituted a contest against plaintiff, which was not heard until October 18, 1895. A decision was rendered on such contest October 24, 1895.

The progress of the case was somewhat slow in the Interior Department, the rehearing applied for by defendant being granted February, 1899, five years after the institution of the contest. It thus appears that plaintiff had from the twenty-eighth of March, 1894, until October 18, 1895, to prepare for the first hearing upon the contest, and had over five years to the final hearing, in 1899. And he alleges that he had learned as early as January, 1894, that the deed of defendant to his son-in-law was fraudulent. It is true he attempted to show diligence in his investigations, but all he did was to visit Morris County in 1894, and to send an attorney there in 1899, who discovered nothing. And he finally alleges, that on or about the first of March, 1901, which was after the proceedings in the Land Department had closed, he learned "of the existence of proof sufficient to substantiate the allegations of fraud and imposition on the defendant's part." From whom or how he learned it or what defendant did to keep it from him, is not alleged. These allegations only show that the plaintiff has further evidence upon one of the issues made before the Land Department, which he had abundance of time and opportunity to discover and present, and no fact is alleged that anything was done to prevent him from discovering or presenting it, except the general allegation that cunning and deceit were practiced upon him. Of what they consisted he does not allege, or why they endured and were successful for over five years and until the case was closed in the Land Department.

The case therefore falls within the doctrine of *Vance* v. *Burbank*, 101 U. S. 514, 519; *De Cambra* v. *Rogers*, 189 U. S. 119; *Estes* v. *Timmons*, 199 U. S. 391; *United States* v. *Throckmorton*, 98 U. S. 65; *Friese* v. *Hummel* (Ore.), 37 Pac. Rep. 458. In *Vance* v. *Burbank*, *supra*, this court said, expressing the principle that is to be applied in cases like that at bar:

"It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may

properly be said there never has been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents even are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal. *United States* v. *Throckmorton,* 98 U. S. 61; *Marquez* v. *Frisbie, supra.* The decision of the proper officers of the department is in the nature of a judicial determination of the matter in dispute."

The cases adduced by plaintiff are consistent with that principle. They only declare the general doctrine that the holder of a patent may be declared to hold the same as trustee for another when he has procured it by an error of law committed by the Land Department, the facts being undisputed, or by fraud or imposition upon that Department. Of the character of the fraud and in what way or under what circumstances exerted in order to be a ground of relief, the cases we have cited are examples.

*Decree affirmed.*