**UNITED STATES v. BUCHER (two cases).**

(Circuit Court of Appeals, Eighth Circuit. November 17, 1926.)

Nos. 7130, 7131.

**1. Public lands ⬤⟞120—Evidence of fraud in making final proof as to residence on homestead held insufficient to warrant cancellation of patents (Rev. St. § 2291, as amended by Act June 6, 1912 [Comp. St. § 4532]; Act Feb. 19, 1909 [35 Stat. 639]).**

In consolidated suits to cancel patents, issued under Rev. St. § 2291, as amended Act June 6, 1912 (Comp. St. § 4532), and Act Feb. 19, 1909 (35 Stat. 639), for homestead and grazing lands, evidence of defendant's fraud in making final proof as to the requisite residence on such homestead *held* insufficient to warrant relief sought.

**2. Public lands ⬤⟞120—Evidence of fraud must be clear and convincing to justify annulling of patent.**

To justify court in annulling patent, evidence of fraud must be clear, unequivocal, and convincing.

**3. Public lands ⬤⟞35(3)—Homestead entryman's absence for unauthorized time held sufficiently explained (Rev. St. § 2291, as amended by Act June 6, 1912 [Comp. St. § 4532]).**

Absence of homestead entryman for greater time each year than allowed, under Rev. St. § 2291, as amended Act June 6, 1912 (Comp. St. § 4532), *held* sufficiently explained by her statement that she was away teaching school, being unable to make a living on the land.

**4. Public lands ⬤⟞106(1)—Findings of fact by Land Department are final, in absence of fraud, imposition, or mistake.**

Findings of fact by Land Department on question whether requisite residence on homestead entry has been shown though open to review by courts, are final in absence of fraud, imposition, or mistake.

Appeal from the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Consolidated suits by the United States against Albert Bucher and Eugenia Bucher, formerly Eugenia Peterson. From decrees for defendants, the plaintiff appeals. Affirmed.

Clyde M. Watts, Asst. U. S. Atty., of Cheyenne, Wyo. (Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Thomas M. Fagan, of Lusk, Wyo., for appellees.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

FARIS, District Judge. These are suits in equity to cancel certain patents heretofore issued by plaintiff to defendants for certain lands, as homesteads and grazing lands appurtenant thereto, on the ground that fraud was perpetrated by defendants in making final proof as to the requisite residence on such homesteads. On a trial below the cases were consolidated for reasons obvious from the facts. The findings and decrees went against the government, dismissing its bills, and these appeals were taken in the usual way.

On the 13th day of August, 1913, defendant Eugenia Bucher, then unmarried and in the name of Eugenia Peterson, acquired, and filed on the homestead in controversy here in her case, after purchasing the improvements and securing a relinquishment from a former entryman. On the 6th day of May, 1914, defendant Albert Bucher took up the homestead in controversy as to him by entry, after purchasing from the original entryman the improvements thereon and procuring a relinquishment from such original settler. In 1915, defendants were married to each other and afterwards the husband elected to reside on the homestead he had entered, as by law permitted. Act April 6, 1914, 38 Stat. 312 (Comp. St. § 4538a). Thereafter, of course, till the required terms of residence were fulfilled, the facts of the joint residence of the spouses on the homestead of the husband furnished the test of compliance as to the requisite residence of both such spouses. Within two years, after the completion of the three years of the disputed actual residence required by law, final proof was made and in due course, the patents herein sought to be canceled were issued and delivered. Certain grazing lands as appurtenant to each of the homesteads were also filed on by the defendants, under the provisions of Act Feb. 19, 1909 (35 Stat. 639); but of these nothing further need be said, since the cases turn wholly on the questions of fraud, vel non in the making of final proofs of residence on the original homesteads, to which such additional entries of grazing lands were appurtenant.

As said, since the facts in the two cases are wholly similar after the intermarriage of the defendants, on November 28, 1915, they were consolidated for trial below, were appealed (except for certain records and pleadings) on a joint transcript, presented together in arguments and briefs, and may well be disposed of in a single opinion.

Both of the homestead entries in controversy were under the provisions of section 2291, R. S., as amended by Act June 6, 1912 (Comp. St. § 4532), which section as amended reads, so far as pertinent, as follows:

"No certificate, however, shall be given or patent issued therefore until the expiration of three years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry, * * * proves by himself and by two credible witnesses that he, she, or they have a habitable house upon the land and have actually resided upon and cultivated the same for the term of three years succeeding the time of filing the affidavit, * * * then in such case he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law: Provided, that upon filing in the local land office notice of the beginning of such absence, the entryman shall be entitled to a continuous leave of absence from the land for a period not exceeding five months in each year after establishing residence, and upon the termination of such absence the entryman shall file a notice of such termination in the local land office, but in case of commutation the fourteen months' actual residence as now required by law must be shown, and the person commuting must be at the time a citizen of the United States."

[1] The sole error relied on for reversal is that fraud was committed in the making of final proofs of residence on which the certificates provided for by the statute, supra, were issued, for that the true facts, as elicited on the trial below, are so at variance with those shown in such final proofs as to bespeak fraud, for which cancellation should be decreed. This, at least, is the specific ground set up in the bills of complaint, and this was the theory on which the cases were tried below. In such situation it is not necessary to consider whether, under the statute the certificates ought to have been issued, or withheld, upon the proofs made when they were issued.

As to the facts touching actual residence of defendants on these homesteads, the evidence tended to show, as to defendant Eugenia Bucher, then Peterson, that in the summer of 1913, she lived for a while in a small house on the land which she later entered. Liking the location, she concluded to file a homestead entry on such land; she bought the improvements then on the place, filed on the land, and went to live thereon in August, 1913. By occupation she was a school-teacher, employed at East St. Louis, Ill. When her school began in September, 1913, she left the homestead thus established and taught school until some time in May, 1914, when she again returned to the land, whereon she remained till late in the fall, when she again left either

to teach school or to take further training in a teacher's college in Colorado. She returned to the homestead in the spring of 1915, and remained thereon till she married defendant Albert Bucher in November, 1915. She had furniture on the place and most of her personal belongings were there. She had friends from the East visiting her one summer. She entertained there a women's club of the vicinage. She was repeatedly seen there during the summers by divers neighbors of this sparsely settled country. She caused to be cultivated each year some 40 acres, out of a total tillable area of some 50 acres. She expended fairly large sums for this work and in fencing and improving the place. It is true that the crops planted were not harvested, because they were either ruined by the drought, or destroyed by trespassing live stock of neighboring settlers; but this fact cuts no figure in the case.

Defendant Albert Bucher likewise bought the improvements from a prior entryman and filed on his homestead in June, 1914. He paid this entryman the sum of $1,000 for these improvements and at once began the erection on the homestead of a larger and better dwelling house. He built a large barn, a windmill, fences, and corrals, at a total cost of some $3,000 to $4,000. He furnished the dwelling house in a manner unusually better than was the custom in the neighborhood. He cultivated the place in each of the years he was required to maintain a residence thereon, and some years raised fair crops. He bought a butcher shop in the town of Lusk, some three miles from the homestead, and thereafter raised poultry, hogs, cattle, and sheep, which he kept, fed, and butchered on the place in controversy and sold their meats in his butcher shop. He rented a room in the town of Lusk, which he sometimes occupied at night; but he says, and the weight of the evidence does not contradict him convincingly, that he usually went to his homestead in the evening, and brought back his meats to his shop therefrom in the morning, and sold them in his shop during the day. His employés, who assisted in his town business and in improving and cultivating the homestead, seem for the most part to have been also on the place practically continuously.

On the 28th day of November, 1915, this defendant and Eugenia Peterson were married. After a trip to Chicago the spouses returned and the wife, after the election to reside on the husband's homestead, moved her personal effects to this homestead. They rented two rooms in Lusk, which they occupied at times, on account of convenience and

seemingly at times on account of the inclemency of the weather; they sometimes ate and slept in these rented quarters. They went back and forth, however, almost daily between these rooms in town and the homestead and fed and cared for, or personally assisted in feeding and caring for the live stock kept there. In this they are corroborated by many witnesses, even to an extent by some of those offered on the trial by the plaintiff. Some three houses were bought or built by defendant in the town of Lusk, in one of which he and his wife maintained quarters of temporary living, using them in a manner similar to their use of the rented rooms.

Defendant Eugenia Bucher, accounting for her absence, when making final proofs gave as her excuse that she had no means or money with which to support herself, or with which to cultivate and improve her homestead, save such as she could earn by teaching school, and so was compelled to absent herself from this homestead for more than the time allowed by statute. In effect she said the same on the trial of the case below.

Defendant Albert Bucher on his part explains his maintenance of a room or rooms and later of a house in Lusk, by the statement that he operated a butcher shop there, and was required by law to have a place other than such shop in which to change his clothing, and that he bought this house as he did others in Lusk primarily as an investment. We need not inquire whether there was such a law or not. If Bucher believed there was such a law, and acted in good faith on such belief, the lack of such a law cuts no figure in the case. In making final proof he said, as to his residence on the homestead, this: "There was no absence during the first year. I left the land in November, 1915, and returned to it in April, 1916. Then I left it in November, 1916, and returned to it April, 1917. And am still there. During these absences I was there every day, as I kept a number of stock on the land; I am a butcher and have my slaughter house there." He also stated in his final proof that he had personal property in Lusk consisting of fixtures in his butcher shop and furniture in the house in Lusk, which house was occupied by his mother-in-law. Whether he actually resided on the homestead the whole of the first year was a controverted question, which will again be referred to.

The witness Millburn, in his affidavit made on defendant's making final proof, said as to the matter of the residence of defendant on the homestead this: "He would be on the place I should think at least three days out of the week, this would be for the purpose of

15 F.(2d)—50

feeding his stock, and killing beef for this market in Lusk, Wyo. Three or four weeks would cover his absence out of the state, the balance of the time he was here, looking after his meat market and taking care of his stock on the ranch." Other witnesses used to make final proof of residence on this homestead and the appurtenant entry, either corroborated the defendant and his witness Millburn, or they were so indefinite in their statements as to produce no tangible contradiction of what defendant and Millburn said.

[2] The evidence offered by plaintiff on the trial as to the occupancy by defendant of the rented rooms in Lusk and of defendant Bucher and his wife of the house in this town was so indefinite—some of it as to time and some of it as to other facts—as to be of little value. We are of the opinion, upon reading it with care, that it did not measure up to the requirements of the rule laid down by this court in the case of United States v. Paiz (C. C. A.) 293 F. loc. cit. 756, where it was said: "To justify a court of equity in annulling such a patent, the evidence of fraud must be 'clear, unequivocal and convincing.' Maxwell Land Grant Case, 121 U. S. 325, 381, 7 S. Ct. 1015, 30 L. Ed. 949; Colorado Coal Co. v. United States, 123 U. S. 307, 316, 8 S. Ct. 131, 31 L. Ed. 182; United States v. Navigation Co., 142 U. S. 510, 541, 12 S. Ct. 308, 35 L. Ed. 1099; United States v. Budd, 144 U. S. 154, 12 S. Ct. 575, 36 L. Ed. 384; and in this court, United States v. Delatour (C. C. A.) 275 F. 137, 138, and United States v. Medland (C. C. A.) 281 F. 649, 651."

[3] It is clear, both from the final proof and from her own evidence, that defendant Eugenia Bucher, then Peterson, did not reside on her individual homestead as long, all told, in any one year as seven months, as the statute requires. But in her affidavit filed in final proof she frankly says so, as note her statement: "1913 I left in September and returned in May, 1914. Was in East St. Louis, Ill., teaching school. The same during the winter of 1914 and 1915. At this time I was single and was compelled to be away for these periods. I could not make a living on the land, and the money I earned teaching I used to live upon and to improve these premises." This court has said: "Temporary absences do not vitiate the residence, if properly explained. But, on the other hand, there must be good faith on the part of the homesteader to establish a home for himself and family upon the land." United States v. Bennett (C. C. A.) 296 F. loc. cit. 413. The truth of the explanation made by her for her absence from the land is

in no way assailed by plaintiff. It seems satisfactory under the above rule as a proper explanation (United States v. Collett, 159 F. 932, 87 C. C. A. 460), and it was so accepted by the officers of the government who were charged by law with taking final proof, issuing the certificate and granting the patent. Besides, the question here is not whether this court, or the trial court would have accepted as sufficient the proof made touching actual residence on these homesteads by either of these defendants, but it is whether the true facts, as disclosed on the trial below, were so far in conflict with the affidavits made for final proof by defendants and their compurgators as to show clearly, unequivocally and convincingly that the officers who accepted this final proof were induced to do so by the perjury or false swearing of such affiants. .

[4] The rule is well settled that, while matters of this sort which have been passed on by the Land Department of the government are open to review by the courts, such findings are final and review cannot be had in the courts in the absence of fraud, imposition or mistake. Carr v. Fife, 156 U. S. 494, 15 S. Ct. 427, 39 L. Ed. 508; Johnson v. Drew, 171 U. S. 95, 18 S. Ct. 800, 43 L. Ed. 88; De Cambra v. Rogers, 189 U. S. 119, 23 S. Ct. 519, 47 L. Ed. 734; Hartwell v. Havighorst, 196 U. S. 635, 25 S. Ct. 793, 49 L. Ed. 629; Greenameyer v. Coate, 212 U. S. 434;[1] Burfenning v. Chicago, etc., Ry. Co., 163 U. S. 321, 16 S. Ct. 1018, 41 L. Ed. 175. In the Burfenning Case, supra, at page 323 (16 S. Ct. 1019), it was said:

"It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the Land Department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department, one way or the other, in reference to these questions is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be re-examined. Johnson v. Towsley, 13 Wall. 72 [20 L. Ed. 485]; St. Louis Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Steel v. Smelting Co., 106 U. S. 447 [1 S. Ct. 389, 27 L. Ed. 226]; Wright v. Roseberry, 121 U. S. 488 [7 S. Ct. 985, 30 L. Ed. 1039]; Heath v. Wallace, 138 U. S. 573 [11 S. Ct. 380, 34 L. Ed. 1063]; McCormick v. Hayes, 159 U. S. 332 [16 S. Ct. 37, 40 L. Ed. 171]."

[1] 29 S. Ct. 345, 53 L. Ed. 587.

In the light of the law and the facts, the case as to defendant Eugenia Bucher is not even a close one, so far at least as concerns her residence up to the time of her marriage. If regard be had solely to what the witnesses for plaintiff, Mrs. Sadie Damon and Mrs. Eldora Millburn, said on their examinations in chief, it may be said to present a close question as to defendant Albert Bucher. But the cross-examinations of these two witnesses disclose that the definiteness, accuracy of recollection, and means of observation of these witnesses were greatly shaken on such cross-examinations. To this situation, and to the fact that there were some obvious contradictions, not only as between the witnesses for the plaintiff and the defendant, but as between the witnesses for the plaintiff inter sese, what was said in the case of Creamer v. Bivert, 214 Mo. loc. cit. 479, 113 S. W. 1120, by that amiable philosopher, learned man and able jurist, Lamm, J., is peculiarly apposite:

"The bulk of the testimony was oral. In such condition of things, while this court has said over and over again that the whole record must come here in equity cases so that (sitting as the final arbiter in chancery) we may weigh and decide de novo and thus do equity, yet the court is also fond of saying that deference should be given to the trial chancellor. He sees and hears much we cannot see and hear. We well know there are things of pith that cannot be preserved in or shown by the written page of a bill of exceptions. Truth does not always stalk boldly forth naked, but modest withal, in a printed abstract in a court of last resort. She oft hides in nooks and crannies visible only to the mind's eye of the judge who tries the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or the flippant or sneering tone, the heat, the calmness, the yawn, the sigh, the candor or lack of it, the scant or full realization of the solemnity of an oath, the carriage and mein. The brazen face of the liar, the glibness of the schooled witness in reciting a lesson or the itching overeagerness of the swift witness, as well as the honest face of the truthful one, are alone seen by him. In short, one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light and yet not a soul who heard it, nisi, believed a word of it; and another witness may testify so that it reads brokenly and obscurely in print and yet there was that about the witness that carried conviction of truth to every soul who heard him testify. Therefore, where an issue in equity rests alone on the credibility of witnesses, the upper court may with entire pro-

priety rest somewhat on the superior advantage of the lower court in determining a fact."

This court has expressed the identical view, some hundreds of times; but, with deference, never perhaps so graphically or vividly, in expressing reasons for the rule. Roswell Drainage District v. Dickey (C. C. A.) 292 F. 29; Huhn v. Strong-Scott Mfg. Co. (C. C. A.) 265 F. 638; Stratton v. Buller (C. C. A.) 268 F. 823; Great Northern R. Co. v. Philadelphia, etc., Co., 242 F. 799, 155 C. C. A. 387; Schlank v. Smith, 246 F. 686, 158 C. C. A. 642; Silver King, etc., Co. v. Conkling Mining Co., 255 F. 740, 167 C. C. A. 86. And the Supreme Court and other circuits have done the like. Hewitt v. Campbell, 109 U. S. 103, 3 S. Ct. 68, 27 L. Ed. 873; Bell v. Saxon (C. C. A.) 296 F. 690; Johnson v. Ellmers (C. C. A.) 295 F. 685.

We are of the opinion that the decrees below, dismissing plaintiff's bills of complaint should be, and accordingly they are, affirmed.