## TOWN OF BOYNTON v. WHITE CONST. CO.

No. 6663.

Circuit Court of Appeals, Fifth Circuit.
April 1, 1933.

M. D. Carmichael, Edwin T. Osteen, J. Stockton Bryan, and R. K. Lewis, all of West Palm Beach, Fla., and George T. Clark and Thomas J. Ellis, both of Miami, Fla., for appellant.

Giles J. Patterson, of Jacksonville, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant suffered a judgment in a law action to go against it by default. Some eleven months afterwards it brought this action on the equity side of the same court to set that judgment aside for fraud. The bill set out the making of a contract for the construction of street improvements and the making of those improvements; that, as the result of the fraudulent collusion of the engineer and the town council with the contractor, a change was made in the contract after its execution by which the basis of payment for rock used was changed from cubic yards to tons, with a resulting loss to the city of some $60,000; that a further fraudulent and collusive change was the excising from the contract of a provision originally in it, giving the city the benefit of reductions to the contractor of the base price of rock at the quarry, so that, though the contractor received the reduction, the city got no benefit from it, with a resulting loss of $20,000. It was alleged that through the same collusion and fraud other departures from the contract were made, with the result that the cost to the city of the entire work was increased $110,000 from the amount accepted as the bid of the successful contractor, $397,558.50 to $504,587.54, the amount of the engineer's final estimate. It alleged that in January, 1930, through an accountant employed by complainant, discovering the fraudulent items of which it now complains, it brought this suit, praying that the judgment be set aside and declared null and void, and that the defendant be restrained from disposing of, or from undertaking in any way to collect upon, it. By supplemental bill it alleged that during the course of the construction of the work the citizens of the town suspected that there was fraud and collusion in connection with it, but they were unable, because the city council was holding secret meetings and for other reasons, and because they could not obtain an audit of the books, to ascertain these facts while the old council was in office.

The defendant admitted the execution of the contract and the performance of the work, the making of final estimate, its acceptance by the city, payments on account of it, and the judgment following. It expressly denied that there had been any fraud or collusion, and specifically alleged that each and every thing done had been done in good faith and in strict accordance with its agreement. Plaintiff called as witnesses none of the members of the city council, neither those who had made the contract and approved the estimate, and who plaintiff alleged were in collusion with the defendant, nor those who, commissioners at the time the judgment was obtained, plaintiffs had alleged were both innocent and ignorant of any wrongdoing. It called not a single officer of the city to show that the facts which it now claims to know, and on the basis of which it seeks to set the judgment aside, were not known and could not have been discovered by them at the time of the judgment. It offered no evidence showing that deception had been practiced on any of the officers of the town at the time of the trial to prevent them from making their defenses, either by way of representation or concealment. The only evidence it offered as tending to show fraud was the evidence of the auditor that he had discovered two pages purporting to be the last two signed pages of a contract between the White Construction Company and the city, which contract fixed the price per cubic yard instead of per ton, and had in it the provision for rebating to the city to the extent that the contractor got a better price than $1.50 per ton for the rock. It proved that these pages were found loose in a general file, and, in addition to offering them, it offered the original specifications and bids showing that the specifications contained a provision that local rock was to be bid on per cubic yard and quarry rock per ton, that all the bids were on a cubic yard basis, and that all of the specifications contained the provision for giving

the city the benefit of the reduction in the price at the quarry.

In addition to other suspicious circumstances, there was proof that one page of the contract as finally set up had had something cut off of it, and the pages then pasted together, and photostatic copies of the estimates of quantities showed that there had been changes made in them from cubic yards to tons. The point the city makes about this change is that, while a cubic yard of loose rock weighs a little more than a ton, a cubic yard of packed rock weighs considerably more, and that by changing the basis of payment from yards to tons the city was made to pay considerably more than it would have otherwise paid.

There was no direct testimony that the contract as finally agreed on was other than as sued on in the lawsuit. Also it was affirmatively shown that in the proceedings filed by the town in June, 1928, for the validation of the bonds which had been issued to pay for the improvements, the contract attached to the bill read as the contract in the lawsuit did, and that it was there alleged that the work had been properly completed and accepted. Riddle, the engineer, testified positively that the contract sued on was the contract made, that there was no overreaching, no fraud, no collusion, and that the amount which he certified as due was actually due. The manager for the defendant testified to the same effect. No explanation of the two contract sheets found in the file was attempted either by plaintiff or defendant as to what they were, or why they were there. Riddle's explanation of the apparent change of the basis of measurement from cubic yards to tons was that, when the bids were taken, and before the contract was finally made, it was contemplated that they might use local rock, which, there being no facilities to weigh it, was to be measured by volume; that, when they decided to reject local rock and use shipped in rock, they adopted and used the unit quantity set out in the specifications as the basis of payment for it.

The master found against the city's claim of fraud on all matters except those having to do with changes in the contract. He found that the city received all the material it paid for, but that there was evidence which would justify a finding that the contract was fraudulently changed by changing the basis of payment from cubic yards to tons, and by leaving out the provision for giving the city the benefit of any reduction in the price of the rock the contractor might ob-tain. He found that the work was completed and the engineer's final estimate filed about June, 1927; that in August, 1929, defendant wrote the town board advising it that it claimed a balance of $231,295 which it proposed to sue on; that at that time the town council contained one member who had participated in the making of the contract and two members who had taken no part in the proceedings, the three constituting the council; that a casual examination of the town records would have disclosed that the defendant's bid for the work was $397,558.50 and the final estimate $504,587.54; that the engineer's detailed final estimate would have shown the items complained of in this suit, and the complainant could have procured its evidence and prepared its defenses in time for the trial, but that, no steps having been taken toward defending, judgment was rendered on November 29, 1929; that in December, 1929, and June 1930, payments were made on the judgment, the latter in compromise and settlement of a suit to compel the application of certain moneys to the payment of the judgment. He found that the defendant did nothing to prevent the complainant from defending the action, and that, by reason of laches and negligence in not defending it, and in not taking steps sooner to vacate the judgment, plaintiff's action was barred. The District Judge, approving these findings, entered judgment accordingly. We think the District Judge was right.

 It is fundamental that "a court of equity will not, on the application of the defendant in a judgment at law, who has had a fair opportunity to be heard, * * * set aside the judgment or enjoin its enforcement simply on the ground that it was unjust, irregular or erroneous, or because the equity court would, in deciding the same case, have come to a different conclusion." Peacock v. Feaster, 52 Fla. 565, 42 So. 889, 893; Black on Judgments (2d Ed.) 366. It is the rule that "a court of equity does not interfere with judgments at law, unless the complainant has an equitable defense of which he could not avail himself at law, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents." Jenner v. Murray (C. C. A.) 32 F.(2d) 625, 627; Harrison v. Triplex Gold Mines (C. C. A.) 33 F.(2d) 667; Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399, 43 S. Ct. 458, 67 L. Ed. 719; Greenameyer v. Coate, 212 U. S. 434, 29 S. Ct. 345, 53 L. Ed. 587; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93.

The most that can be made out of plaintiff's case is that there is some evidence that the judgment was obtained on an altered contract, and that the amount recovered was through the fraud and collusion of the city council and the engineer in allowing the final estimate for more than it ought to have been. There is neither claim nor proof that "the fraud charged really prevented the party complaining from making a full and fair defense." There is neither claim nor proof that anything was done by the contractor to prevent the city from making its defenses. It is only claimed that the city did not know it had them, and, because it did not know, it did not make them.

When it is considered that the only fraud claimed is in permitting an overestimate to be made, when it is considered that this estimate was made more than two years before the suit was filed, that it was set up and made publicly known in validation proceedings, that new councilmen were in office when the suit was filed, that, though the citizens of the town had suspected and had been contending for more than two years that there was something wrong with the contract, nothing was done by the council to prepare itself for defense, it cannot be that the city may now undertake to set the judgment aside.

Further, if it might be considered that, because a town can act only through its officers, definite and satisfactory proof or admission of fraud and collusion resulting in a false estimate and continuing to the time of the suit would make out a case of fraud in the obtaining of the judgment, the record is entirely wanting in such proof. The most that can be said of plaintiff's evidence is that, if it had been offered in the original suit, it would have presented an issue for decision. Offered as it is in this suit to set aside a judgment, it falls far below the measure of proof required.

The judgment is affirmed.