# WRIGHT–BLODGETT COMPANY *v.* UNITED STATES.

## SAME *v.* SAME.

## SAME *v.* SAME.

## SAME *v.* SAME.

## SAME *v.* SAME.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

Nos. 151, 152, 154, 155, 156. Argued January 26, 27, 1915.—Decided
February 23, 1915.

Although several cases cancelling patents for fraud have been de-
cided by the District Court without opinion, if the same decree was
entered in all the cases and all were alike in their main features,
although varying in details, and the Circuit Court of Appeals af-
firmed all the decrees with an opinion stating that fraud in the entry
was proved and that the grantee was charged with knowledge, the
two courts must be deemed to have concurred in their findings;
and the rule that under such conditions their determinations upon
questions of fact, in absence of clear error will not be disturbed,
applies.

While a patent obtained by fraud is not void or subject to collateral
attack, it may be directly assailed by the Government in a suit
against the patentee or grantee, and such a suit can only be sus-
tained by proof producing conviction.

Despite satisfactory proof of fraud in obtaining the patent, if the legal
title has passed, *bona fide* purchase for value is a perfect defense;
but it is an affirmative one which the grantee must establish in
order to defeat the Government's right to cancel a patent which
fraud alone is shown to have induced. *Boone* v. *Chiles*, 10 Pet.
177.

203 Fed. Rep. 263, affirmed.

THE facts, which involve the validity of certain land patents issued under the homestead laws of the United States, are stated in the opinion.

Mr. J. Blanc Monroe, with whom Mr. Monte M. Lemann and Mr. A. R. Mitchell were on the brief, for appellant:

When the United States brings a suit to annul a patent to land held by a vendee of the entryman, on the ground of fraud in the entryman it must prove actual notice of such fraud in said vendee. United States v. Clark, 200 U. S. 601; United States v. Detroit Lumber Co., 200 U. S. 321.

When the United States seeks to annul a patent on grounds of fraud in the entryman and notice in his vendee, the specific details of the fraud and of the notice must be set out in the bill, and the probata must conform to the allegata. Maxwell Land Grant Case, 121 U. S. 325; United States v. Barber Lumber Co., 172 Fed. Rep. 950; United States v. Atherton, 102 U. S. 372; Harrison v. Nixon, 9 Pet. 503.

It will not do for the United States to allege notice in one way and through named individuals, and to attempt to prove notice in another way and through other individuals. See cases supra.

When seeking to annul a patent under the seal and signature of the President, the United States to succeed must adduce that class of evidence which commands respect and that amount which produces conviction. A patent cannot be set aside upon a bare preponderance of evidence which leaves the issue in doubt. Maxwell Land Grant Case, 121 U. S. 381; Colorado Coal Co. v. United States, 123 U. S. 307; 133 U. S. 193; United States v. Stinson, 197 U. S. 200.

The officials of the land office of the United States are affirmatively charged with the duty of investigating land entries and of ascertaining before issuing either a final receipt or patent, that the law is fully complied with. The

purchaser from a person holding a final receipt is charged with no such duty.  On the contrary, he is entitled to buy on the faith of the patent and receipt and without looking for grounds of doubt.  If the bill shows that the entryman's actions, settlement and proof deceived the trained sleuths of the Government land department, and that they issued both final receipt and patent, a strong *de facto* presumption arises that the entryman's vendee was likewise deceived.

General statements that representatives of the defendant were in the general neighborhood at the time of the purchase are not sufficient to overcome this presumption particularly so when the improvements placed upon the land were such as to create in the casual observer the belief that the law was fully complied with.  *Maxwell Land Grant Case*, 121 U. S. 381; *Clark Case*, 200 U. S. 601.

Nor will such general statements prevail when the record shows that defendants were in the habit of buying land on a general cruiser's estimate without special examination and that they purchased the particular land in controversy on the advice of counsel of high standing after examination of the abstract of title thereto.

As Rev. Stat., § 2301 does not require a commuter to prove that he has not agreed to sell his land before receiving his final receipt, this court will not write such a provision into that statute.  *Williamson* v. *United States*, 207 U. S. 455; *United States* v. *Biggs*, 211 U. S. 507; *Adams* v. *Church*, 193 U. S. 510; *United States* v. *Sullenberger*, 211 U. S. 525; *United States* v. *Freeman*, 211 U. S. 523.

When the United States, while attempting to discharge its obligation to show actual notice on the part of the defendant of the fraud in the entryman places the entryman on the stand and the latter swears that he took an agent of the defendant to the land, pointed out to him the improvements which he, the entryman, had placed upon it and "assured" said agent that everything which the

law required had been done, the United States not only fails to prove notice in the defendant but affirmatively establishes defendant's good faith and absence of notice.

*Mr. Assistant Attorney General Knaebel,* with whom *Mr. S. W. Williams* was on the brief, for the United States:

The two lower courts having concurred in finding that the testimony respecting cultivation, residence, and improvements was false, and that the appellant had notice through its agents on the ground at the time of its purchase, the finding should not be disturbed unless clearly erroneous.

There is evidence to support the findings.

The Government having, with the requisite certainty, established that the entries were fraudulent, the *onus* was upon the appellant to make good its plea of *bona fide* purchase without notice.

The evidence of the unlawful prior agreements was competent.

In support of these contentions, see *Bailey* v. *Sanders,* 228 U. S. 603; *Boone* v. *Chiles,* 10 Pet. 177; *Gilson* v. *United States,* 234 U. S. 380; *Jones* v. *Meehan,* 175 U. S. 1; *Neale* v. *Neales,* 9 Wall. 1; *Texas & Pac. Ry.* v. *R. R. Com. of La.,* 232 U. S. 338; *United States* v. *Brannan,* 217 Fed. Rep. 849; *United States* v. *Cal. & Oreg. Land Co.,* 192 U. S. 355; *United States* v. *Clark,* 200 U. S. 601; *United States* v. *Hill,* 217 Fed. Rep. 841.

MR. JUSTICE HUGHES delivered the opinion of the court.

These five cases, although involving separate transactions, may conveniently be considered in a single opinion. The suits were brought by the United States to annul certain land patents [1] issued under the homestead laws upon

---

[1] In No. 151 the entry was made October 19, 1898, by Joe J. Hicks; commutation proof was offered June 11, 1901, and final certificate is-

the ground that the respective entrymen had defrauded the Government in securing the patents in that they had not actually resided upon the land and cultivated it as required by the statute, the statements in their proofs upon commutation being false.  Rev. Stat., § 2301.  It was further averred that the Wright-Blodgett Company, the appellant, at the time of its purchase of the respective tracts had notice through its agents of the fraud which had been perpetrated by the entrymen.  The appellant answered in each case, disclaiming all knowledge of the alleged fraud and setting up that it was a *bona fide* purchaser for value after the issuance to the entrymen of the final receipts.  The cases were separately heard and in each, upon pleadings and proofs, a decree was entered canceling the patent.  Upon appeal, the Circuit Court of Appeals affirmed the decrees.  The opinion of that court stated that it found 'that fraud in the homestead entry' was proved, and that the appellant was 'charged through its active agents on the ground with knowledge of the fraud.'

---

sued July 6, 1901; on July 10, 1901, the entryman sold the land to the appellant.  Patent was issued April 1, 1902.

In No. 152 the entry was made April 10, 1899, by Walter O. Allen; commutation proof was offered June 11, 1901, and final certificate issued July 8, 1901; on July 10, 1901, the entryman sold the land to the appellant.  Patent was issued July 5, 1902.

In No. 154 the entry was made January 13, 1900, by Elijah Z. Boyd; commutation proof was offered May 18, 1901, and final certificate issued May 24, 1901; on June 21, 1901, the entryman sold the land to the appellant.  Patent was issued February 15, 1902.

In No. 155 the entry was made May 4, 1899, by Samuel S. Akin, Jr., commutation proof was offered August 17, 1901, and final certificate issued September 18, 1901; on September 28, 1901, the entryman sold the land to the appellant.  Patent was issued April 1, 1902.

In No. 156 the entry was made January 31, 1900, by Samuel E. Bryers; commutation proof was offered August 17, 1901, and final certificate issued September 18, 1901; on September 28, 1901, the entryman sold the land to the appellant.  Patent was issued April 1, 1902.

The appellant urges that it does not appear that the two courts concurred in their findings as the cases were decided in the District Court without opinion and, in three of the cases, there was testimony which, according to the Government, tended to show that the transactions were fraudulent not only because there had not been the residence and cultivation required by the statute and stated in the proofs, but also because of agreements prior to the commutation proofs to sell the lands to the appellant. But the District Court rendered its decree in the five cases on the same day; in two of these, it is not suggested that there was evidence of such anticipatory agreements, but the same decree was entered and must have proceeded on the evidence as to the lack of residence and cultivation. While the facts in the several cases vary in details they are so far alike in their main features with respect to residence and cultivation as to make it absolutely impossible to assume that any different conclusion of fact was reached by the District Court in the three cases than that at which it arrived in the two others. The two courts must be deemed to have concurred in their findings and in accordance with the well-settled rule their determination upon mere questions of fact will not be disturbed, unless clear error is shown. *Stuart* v. *Hayden,* 169 U. S. 1, 14; *Towson* v. *Moore,* 173 U. S. 17, 24; *Texas & Pacific Ry.* v. *Railroad Commission,* 232 U. S. 338, 339; *Washington Securities Co.* v. *United States,* 234 U. S. 76, 78; *Gilson* v. *United States,* 234 U. S. 380, 384. An examination of the record fails to disclose any such error in the finding as to the fraud of the entrymen, and it is not necessary to recite the evidence.

It is insisted, however, that in the finding as to the standing of the appellant there was involved an erroneous application of the law. In substance, the argument comes to this,—that in a suit by the United States to cancel a patent upon the ground of fraud, where the land is held

by a grantee of the entryman, the Government must establish that the grantee is not a *bona fide* purchaser for value; that this must be shown by proof of a clear and cogent character; and that, measured by this standard, the Government's case was not made out. This contention proceeds upon an erroneous view of the governing principles as repeatedly set forth in the decisions of this court. These principles may be briefly restated: Where a patent is obtained by false and fraudulent proofs submitted for the purpose of deceiving the officers of the Government, and of thus obtaining public lands without compliance with the requirements of the law, while the patent is not void or subject to collateral attack, it may be directly assailed in a suit by the Government against the parties claiming under it. In such case, the respect due to a patent, the presumption that all the preceding steps required by the law had been observed before its issue, and the immense importance of stability of titles dependent upon these instruments, demand that suit to cancel them should be sustained only by proof which produces conviction. *United States* v. *Minor*, 114 U. S. 233, 239; *Maxwell Land-Grant Case*, 121 U. S. 325, 381; *United States* v. *Stinson*, 197 U. S. 200, 204, 205; *Diamond Coal Co.* v. *United States*, 233 U. S. 236, 239. And, despite satisfactory proof of fraud in obtaining the patent, as the legal title has passed, *bona fide* purchase for value is a perfect defense. *Colorado Coal Co.* v. *United States*, 123 U. S. 307, 313; *United States* v. *Stinson, supra; Diamond Coal Co.* v. *United States, supra; United States* v. *Detroit Lumber Co.*, 200 U. S. 321; *United States* v. *Clark*, 200 U. S. 601. But this is an affirmative defense which the grantee must establish in order to defeat the Government's right to the cancellation of the conveyance which fraud alone is shown to have induced. The rule as to this defense is thus stated in *Boone* v. *Chiles*, 10 Pet. 177, 211, 212: "In setting it up by plea or answer, it must state the deed of purchase, the

date, parties, and contents briefly; that the vendor was seized in fee, and in possession; the consideration must be stated, with a distinct averment that it was *bona fide* and truly paid, independently of the recital in the deed. Notice must be denied previous to, and down to the time of paying the money, and the delivery of the deed; and if notice is specially charged, the denial must be of all circumstances referred to, from which notice can be inferred; and the answer or plea show how the grantor acquired title. . . . The title purchased must be apparently perfect, good at law, a vested estate in fee-simple. . . . It must be by a regular conveyance; for the purchaser of an equitable title holds it subject to the equities upon it in the hands of the vendor, and has no better standing in a court of equity. . . . Such is the case which must be stated to give a defendant the benefit of an answer or plea of an innocent purchase without notice; the case stated must be made out, evidence will not be permitted to be given of any other matter not set out." See also *Smith* v. *Orton*, 131 U. S., *appendix*, lxxv, lxxviii; *Colorado Coal Co.* v. *United States, supra; United States* v. *California &c. Land Co.*, 148 U. S. 31, 41, 42; *United States* v. *Stinson, supra;* Story's Eq. Pl., §§ 805, 805a, 806; 2 Pomeroy, Eq. Jur., §§ 745, 784; *Jewett* v. *Palmer*, 7 Johns. Ch. 65, 68; *Seymour* v. *McKinstry*, 106 N. Y. 230; *Graves* v. *Coutant*, 31 N. J. Eq. 763; *Sillyman* v. *King*, 36 Iowa, 207; *Prickett* v. *Muck*, 74 Wisconsin, 199; *Bank* v. *Ellis*, 30 Minnesota, 270; *Lewis* v. *Lindley*, 19 Montana, 422. In *United States* v. *Detroit Lumber Co., supra*, the Circuit Court of Appeals found that the Detroit Company was a purchaser in good faith and this court reviewing the facts reached the same result. The Company had no knowledge or intimation of wrong until long after the issuance of the patents. In *United States* v. *Clark, supra*, both courts below had found that Clark had no actual knowledge of the alleged frauds or of facts sufficient to put

him upon inquiry. Clark, his agents and advisers, testified that they did not know or suspect anything wrong. (200 U. S., p. 608.) The defense of *bona fide* purchaser for value was completely made out and what is said in the opinion must be read in the light of that fact. Nothing was shown to impair the case which the defendant had established; and there was no intention to depart from the well-settled rule to which we have referred.

In the present case the appellant had its agents upon the ground and it has been found that through these agents it had knowledge of the fraud. The contention that as the Government had alleged notice through particular agents it could not be shown that the Company had acquired knowledge through other agents than those named is without merit; the allegation in the bill as to the particular agents was surplusage. Upon the question of fact, with respect to *bona fides* in its purchase, both courts below have found against the appellant and the record does not show any error requiring the reversal of the decrees.

*Decrees affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of this case.