## UNITED STATES v. PETERSON et al.

Circuit Court of Appeals, Tenth Circuit.
August 1, 1929.

No. 21.

of the plaintiff's case, for insufficiency of proof.

The bill of complaint alleged (1) that the defendant Peterson had made a false affidavit as to her actual residence; (2) that she had agreed to sell the land to the defendant Webster, contrary to a statement in her affidavit; (3) that, after the issuance of the patent, she deeded the land to Webster, but that Webster knew that she had obtained her final certificate through false and fraudulent representations, and that Webster "was not, and is not, an innocent purchaser for value of said lands."

The answer of the defendant Peterson, in substance, denied the fraud, and affirmatively alleged laches on the part of the government, in that no objection to her final proof was made for more than two years after the proof. The answer of the defendant Webster denied any fraud or knowledge thereof on his part, and further alleged that, after final proof, he purchased said land for a valuable consideration, and that he was "an innocent purchaser thereof for value."

Upon the trial, the government assumed the burden of proof as to all the issues. The investigator for the Interior Department was called as a witness. He identified a statement taken from the defendant Peterson, from which it appeared that she had not actually resided on the land, continuously, from November 19, 1919, to December 30, 1922, but intermittently (excepting from June 12, 1920, to August 1, 1920), as her affidavit in support of final proof had stated; that, instead, from September, 1919, to the middle of May, 1920, she had taught school seven miles from her homestead, and boarded near the school, excepting "practically every weekend" spent at the homestead; that during the next two similar school years, she taught the same school, and boarded near the school except for week-ends; that during the next year, she taught another school, but boarded near the school from Monday until Friday. In her statement, she explored her dealings with her codefendant, Webster, his connection with the improvements on the land, and her agreements with him; denied that Webster paid either filing or proof fees, or that she had filed on the land at his request; and explained her efforts to sell after final proof, and how she came eventually to sell to Webster. In her sworn statement to the Inspector, Miss Peterson stated on oath that Webster paid her $1,500 for her original and additional entries. The statement was put in evidence by the plaintiff, and Miss Peterson's statement as to the consideration paid by

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo. (T. Paul Wilcox, Asst. U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

William L. Simpson, of Thermopolis, Wyo., and Milward L. Simpson, of Cody, Wyo., for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. The government sought to cancel final certificate and patents to certain lands in Wyoming, issued to Helen E. Peterson; and to set aside a deed to such lands from the patentee to John W Webster. The trial court dismissed the bill, upon motion of the defendants, at the close

Webster was not contradicted or thereafter challenged.

The government witness also testified to interviews with Webster, disclosing his knowledge of her absences from the homestead while teaching school, except two to four days each week-end; that is, she sometimes returned to the homestead Friday evenings, sometimes in bad weather Saturday mornings, and would go back to her boarding place near school Sunday evening or Monday morning. She had a comfortable well-furnished house on the homestead. No proof was introduced as to any knowledge by Webster of the contents of the affidavit made by Miss Peterson in support of her final proof.

At the conclusion of the government's evidence, the defendant Webster moved for judgment on the ground that there was no evidence of any knowledge of fraud on the part of Webster, and no proof that he was not an innocent purchaser for value. The motion was argued; the record does not disclose the argument, but it does disclose that the court sustained the motion on the ground that the government's evidence showed no knowledge of Webster as to the final proofs. The court said:

"He might have thought, so far as the proof in this case is concerned, or supposed, that this whole thing had been presented to the Government, and, after knowing this, she was issued patent. You have not shown that he knew what the proofs were or that she had not disclosed exactly what residence she had had and it had been disclosed to the Government when she made her final proof."

In this ruling the court doubtless had in mind Bucher's Case, 15 F.(2d) 783 (8 C. C. A.).

The case was dismissed as to the defendant Peterson, on the ground, primarily, that no relief under the bill could be granted as to her if Webster's title was good.

■ We think the proof showed a misstatement of fact by the patentee. Her affidavit stated that she had "actually resided on the land" from November 19, 1919, to December 30, 1922, with only one absence stated (from June 12, 1920, to August 1, 1920) under the heading of "I was absent from the land from ———— to ————." Under question 7(d) she was asked to "state any other facts in connection with your residence necessary to show compliance with the law," and, by making no answer, she affirmed that there were no reservations to her statement as to actual residence.

In this, she was not frank with her government, and, under the decision of U. S. v. Searson, 298 F. 928 (8 C. C. A.), she had not "actually resided" on the land for three years. Prior to the Act of June 6, 1912, 37 Stat. 123 (43 USCA § 164), amending section 2291, Rev. St., residence or cultivation only was necessary, but for a period of five years. But in 1912, *actual* residence upon *and* cultivation of the land for three years was substituted for *residence* upon *or* cultivation of for five years. We do not, of course, know what the Interior Department might have done if the facts had been fully disclosed. We do think that the affidavit did not disclose the facts known to Miss Peterson as to her actual residence.

■ The 1912 act provides for a permissive absence of five months each year upon notice to the Land Office. No attempt was made to comply with the terms for such permission, and the computation of defendant that her actual residence totaled more than seven-twelfths of a year does not cure the incorrect affidavit.

■ Nor is laches a defense. In the first place, the Department must issue a patent within two years unless some formal proceeding in protest is pending; thereafter it must go to the courts to redress fraud. U. S. C. tit. 43, § 1165 (43 USCA § 1165); Lane v. Hoglund, 244 U. S. 174, 37 S. Ct. 558, 61 L. Ed. 1066. Again, laches is not available against the government, where it sues to enforce a public right or to protect a public interest. U. S. v. Beebe, 127 U. S. 338, 8 S. Ct. 1083, 32 L. Ed. 121; U. S. v. Nashville, C. & St. L. Railway Co., 118 U. S. 120, 6 S. Ct. 1006, 30 L. Ed. 81; U. S. v. New Orleans Pacific Ry. Co., 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388. Moreover, the federal statutes provide that a suit to cancel a patent may be brought within six years of its issuance. U. S. C. tit. 43, § 1166 (43 USCA § 1166).

If Miss Peterson still owned the land, the patent would have to be canceled. But she no longer owns it; it is now owned by the defendant Webster, and, notwithstanding the defect in her title, his title is good, if he is an innocent purchaser for value. Ordinarily the burden is upon him to show that he is such a purchaser, notwithstanding the affirmative allegation of the bill that he is not. Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 S. Ct. 339, 59 L. Ed. 637; Curtis, Collins & Holbrook Co. v. United States, 262 U. S. 215, 43 S. Ct. 570, 67 L. Ed. 956.

Under these decisions, the government could have introduced its evidence as to Miss Peterson, rested, and awaited the proof of good faith upon the part of Webster. But

this course was not pursued. Instead, in its case in chief the government explored the business relations as to this land between the defendant Peterson and Webster and Mrs. Webster. The government witness testified as to interviews with .Webster, and many other facts as to Webster's knowledge. Quite obviously the government put on, in chief, its case against Webster. Webster moved for judgment on account of insufficiency of proof. While the argument is not in the record, the trial court decided the case, presumably on the point argued, on the question of the sufficiency of proof. The record contains no hint of any suggestion to the trial court that the burden of proof was upon Webster, or of any request to offer additional proof. The government fairly and frankly put on its whole case in chief. Two questions are argued as to Webster; one as to the sufficiency of the proof, and the second as to the burden of proof. We will take these points in order.

The burden of the government's complaint is the falsity of the affidavit of Miss Peterson. If she told the government the whole truth, and the patent nevertheless was issued, her title would be unassailable, and, a fortiori, Webster's would be. The case of . United States v. Bucher, 15 F.(2d) 783 (8 C. C. A.), was one against the patentees. The proof showed that their actual residence fell far short of the statutory requirement, and far short of the residence proven in this case. In fact, in the Bucher Case, one of the patentees taught school in East St. Louis, a thousand miles from the claim, and was away all winter. But she told the truth in her affidavit, and the patent issued. It was held that the government could not cancel it.

So, in this case, if Miss Peterson had told the whole story, and patent had issued, her title and Webster's would be good. The critical question, and the one stated by the trial court, is, Did Webster know her affidavit was false? On that question, there was no direct proof. That leaves for determination the question of whether Webster knew such facts as would put a reasonable man on inquiry, and whether he should have followed .the trail and ascertained the truth as to the contents of her affidavit.

The government introduced evidence showing that Webster knew she was teaching school during the winters, returning home week-ends. He also knew of the substantial character of her improvements, the cozily furnished home, and the fact it was her only home. He knew that she was presumably in good faith establishing a home and taught school near by in order to get money to improve it. Is this knowledge sufficient to charge him with constructive notice of the fraud?

It is argued that Webster is presumed to know the statute, and that he must have known a false affidavit was made. But, if this presumption is sound, it should also be presumed he knew of the Bucher Case, supra, also a part of the law; and have known that the Department did issue patents on a showing of much less actual residence than in this case.

It was held in United States v. Krueger, 228 F. 97 (8 C. C. A.), that a, purchaser could have such knowledge as to charge him with notice of the fraud. The facts in that case were strong; the patent was granted under an affidavit that the land was unoccupied, unimproved, and not claimed adversely. The purchaser knew it was occupied and improved, and inquiry of the occupant would have disclosed adverse claims, supported by conveyances of record. Even under such facts, the court· treated the question as one of great doubt.

On the other hand, the point was fully discussed in United States v. Detroit Lumber Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499. There the Martin-Alexander Company caused a number of its employees to enter land, the company putting up the money, and their books disclosed the transactions. The patents were therefore voidable. The Detroit Company acquired the Martin-Alexander Company, and bought the title to the land from the patentees for $25 a tract. The government claimed that an investigation of the books of account, in their possession, would have disclosed the fraud. The Supreme Court held that the purchaser was not obliged to inquire into the proofs, and said:

"In their brief counsel for the government say: 'We claim that the law as laid down in Hawley v. Diller, 178 U. S. 476, 20·S. Ct. 986, 44 L. Ed. 1157, that one who takes title before the issuance of patent cannot claim to be a bona fide purchaser, made it the duty of the Detroit Company to make the most searching inquiry, at least as to all of the timber contracts except the thirteen for which patents to the land had issued.'

"We do not understand the law to be as stated, or that one who ·enters into an ordinary and reasonable contract for the purchase of property from another is bound··to presume that the vendor is a wrongdoer, and that, therefore, he must make a searching in-

quiry as to the validity of his claim to the property. The rule of law in respect to purchases of land or timber is the same as that which obtains in other commercial transactions, and such a rule as is claimed by counsel would shake the foundations of commercial business. No one is bound to assume that the party with whom he deals is a wrongdoer, and if he presents property, the title to which is apparently valid, and there are no circumstances disclosed which cast suspicion upon the title, he may rightfully deal with him, and, paying full value for the same, acquire the rights of a purchaser in good faith. Jones v. Simpson, 116 U. S. 609, 615, 6 S. Ct. 538, 29 L. Ed. 742, 744. He is not bound to make a searching examination of all the account books of the vendor nor to hunt for something to cast a suspicion upon the integrity of the title. ٭ ٭ ٭

"The rule in respect to constructive notice was thus stated in Wilson v. Wall, 6 Wall. 83, 90, 91, 18 L. Ed. 727, 730: 'A chancellor will not be astute to charge a constructive trust upon one who has acted honestly and paid a full and fair consideration without notice or knowledge. On this point we need only refer to Sugden on Vendors, p. 622, where he says: "In Ware v. Egmont, 4 De G. M. & G. 460, the Lord Chancellor Cranworth expressed his entire concurrence in what, on many occasions of late years, had fallen from judges of great eminence on the subject of constructive notice, namely, that it was highly inexpedient for courts of equity to extend the doctrine. When a person has not actual notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he ought to have acquired it, but for his gross negligence in the conduct of the business in question. The question, then, when it is sought to affect a purchaser with constructive notice, is not whether he had the means of obtaining, and might, by prudent caution, have obtained the knowledge in question, but whether not obtaining was an act of gross or culpable negligence."' "

The case of United States v. Clark, 138 F. 294 (9 C. C. A.), is another illustration of the rule.

■ In addition to this rule, there is a presumption that all necessary steps have been taken before the patent issued. In Wright-Blodgett Co. v. U. S., 236 U. S. 397, 35 S. Ct. 339, 341, 59 L. Ed. 637, the court restated these rules:

"These principles may be briefly restated: Where a patent is obtained by false and fraudulent proofs submitted for the purpose of deceiving the officers of the government, and of thus obtaining public lands without compliance with the requirements of the law, while the patent is not void or subject to collateral attack, it may be directly assailed in a suit by the government against the parties claiming under it. In such case, the respect due to a patent, the presumption that all the preceding steps required by the law had been observed before its issue, and the immense importance of stability of titles dependent upon these instruments, demand that suit to cancel them should be sustained only by proof which produces conviction. United States v. Minor, 114 U. S. 233, 239, 5 S. Ct. 836, 29 L. Ed. 110, 112; Maxwell Land-Grant Case, 121 U. S. 325, 381, 7 S. Ct. 1015, 30 L. Ed. 949, 959; United States v. Stinson, 197 U. S. 200, 204, 205, 25 S. Ct. 426, 49 L. Ed. 724, 725; Diamond Coal & Coke Co. v. United States, 233 U. S. 236, 239, 34 S. Ct. 507, 58 L. Ed. 936, 939. And despite satisfactory proof of fraud in obtaining the patent, as the legal title has passed, bona fide purchase for value is a perfect defense. Colorado Coal & I. Co. v. United States, 123 U. S. 307, 313, 8 S. Ct. 131, 31 L. Ed. 182, 185; United States v. Stinson and Diamond Coal & Coke Co. v. United States, supra; United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499; United States v. Clark, 200 U. S. 601, 26 S. Ct. 340, 50 L. Ed. 613."

■ Whether the evidence "produces conviction" that Webster knew enough to require him to explore the proceedings back of the patent, whether his failure was "an act of culpable or gross negligence," are questions of fact. And in the Detroit Lumber Co. Case, supra, the Supreme Court said:

"This is a case in equity, and while in such a case questions of fact are always open to consideration by an appellate court, great respect is paid to the conclusions of the trial court in respect to them."

■ And so, in the case at bar, if the learned trial court found, from the evidence, no duty upon Webster to go back of the patent, such finding would not be disturbed on this record. His action in sustaining the motion to dismiss is the equivalent of such a finding. He tries the facts, and if, after the plaintiff has put on its case, he believes its testimony is insufficient, there is no reason why a busy trial judge should be required to listen to the defendant's evidence.

■ Notwithstanding its position in the trial court, the appellant argues that, after all, the burden was on the defendant, and the

ruling should be therefore reversed. The statement of law is correct, but that does not reach the bottom of this case. The facts in this case are that in the trial court the government undertook to show that Webster was not an innocent purchaser for value; it argues in this court at length that he was not. It fails in that effort. May the government now ask for a reversal on the ground that all the time the burden was on defendant? We think not. It is axiomatic that a case may not be tried on one theory in the court below and on another theory here. "Where a party erroneously assumes the burden of proof as to a particular allegation or the burden of evidence as to a particular fact, the mistake will not be corrected in an appellate court." 22 C. J. 70. "Where an action is tried on the theory that it is necessary to prove a certain fact in order to recover, a different position cannot be taken on appeal." 3 C. J. 735.

From the entire record and briefs, it is clear that the position of the government is that the evidence offered justifies a finding that Webster had induced this entry, had agreed to buy it before proof, and knew all about the transaction. The trial court found that the evidence was not sufficient to justify such findings, and we agree. It would serve no useful purpose to send the case back for the purpose of having Webster testify to his good faith, a statement already verified by his answer. And it is unfair to the litigants, as well as the lower court, to try the case on one theory in the court below and another one in this court.

Since the only relief sought as to either defendant is the recovery of the land, and since the title to that has passed to an innocent purchaser for value, no relief can be granted in this action as against either defendant; the decree dismissing the bill was therefore correct, and should be and is affirmed.