## BROWN et al. v. UNITED STATES.

Circuit Court of Appeals, Tenth Circuit.
October 31, 1929.

No. 57.

John Dillon, of Cheyenne, Wyo. (Dillon, Ellery & Spencer, of Cheyenne, Wyo., on the brief), for appellants.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo. (T. Paul Wilcox, Asst. U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.· The appellants seek a reversal of a decree, in a suit brought against them by the United States, canceling a final certificate and patent, issued in 1924 and 1925 pursuant to congressional Act of December 29, 1916 (39 Stat. 862 [43 USCA §§ 291–301]), to the heirs of James

Brain, deceased, upon his additional stock-raising homestead entry, made in 1920, for 360 acres of land in Laramie county, Wyo., and further canceling a warranty deed of the heirs to Rissa McDonald, the wife of Hugh McDonald. The land is described as the E.½, N.W.¼, S.W.¼, N.W.¼, S.W.¼, and S.½, S.E.¼, of section 14, township 19 north, range 69 west, 6th P. M. The act requires proof of improvements tending to increase the value of the land for stock-raising purposes of the value of not less than $1.25 per acre.

The final proof was applied for by appellant Elizabeth Brain Brown, a daughter of the entryman, and was given after notice, in October, 1925, upon her testimony and that of McDonald and wife. Mrs. Brown testified: The improvements consisted of "¼ mile of 4-wire fence on the north, 1 mile of 4-wire fence on the west, 1 mile of 3-wire fence on the south. All built on and for this place since April 1, 1920, and mostly in 1921 and 22, and it was finished this year. It is worth at least $500. It has good pitch posts about 20 feet apart, and is a real fence." McDonald testified: The improvements were "2¼ miles of first class 3 and 4-wire fence built on and for this place. Most of it in 1921 and 1922 and it was finished up this year. It is worth at least $650." Mrs. McDonald testified: The improvements were "2¼ miles of first class 3 and 4-wire fence, built in very hard country to fence and built on and for this place. Mostly in 1921 and 1922, but some of it was built in 1924. It is worth at least $675." Mrs. Brown also testified she had not sold, conveyed, or agreed to sell or convey any portion of the land, and had not optioned, mortgaged, or agreed to option or mortgage or convey the land or any part of it. Both of the McDonalds testified that they had no knowledge or information that the claimant had sold or contracted to sell, or had optioned or mortgaged, or agreed to option or mortgage, the land.

The grounds alleged in the bill for relief were that the claimant and the McDonalds conspired in order to defraud the United States of the title, use, possession, and control of the land, in that the former was to give notice of the proof, naming the latter as witnesses, and they were to falsely and fraudulently testify in the final proof that the land was improved by 2¼ miles of 3 and 4 wire fence worth in excess of $450, and that Mrs. Brown would falsely and fraudulently testify she had not then sold, conveyed, or agreed to sell or convey, or option, mortgaged, or agreed to option or mortgage the land, and the McDonalds would testify falsely and fraudulently that they had no knowledge or information that claimant had done so; and that Hugh McDonald and Rissa McDonald would then pay the fees upon the final proof, and, upon the issuance of patent, purchase the land from the heirs for $700; that they, in consummating the conspiracy, proceeded to make the proof and give such testimony, well knowing it was false; that there was no fence on this land except not to exceed three-fourths of a mile on the west side thereof, of the worth and cost not exceeding $100; that the claimant had agreed to sell the land to the other defendants; that the defendants had thereby misled and deceived the land officials of the United States, and induced the issuance by them of the final certificate and patent for the land.

The defendants answered, admitting the said final proof, proceedings, and testimony, but denying that they entered into the alleged conspiracy or gave false testimony or made fraudulent representations, and averred the testimony was given truthfully, honestly, and in good faith. In addition, Rissa McDonald claimed title to the land as an innocent purchaser for value.

After a trial, the District Court rendered a decree for the government, canceling the certificate, patent, and deed, and taxing the costs to the defendants. They have appealed and assigned as errors that the findings and decree are not supported by the evidence, and the decree is contrary to law.

The District Judge in an opinion expressed his views to the effect that the evidence did not prove an agreement before final proof to convey, that it was sufficient to establish the fraudulent testimony of the McDonalds, but not of Mrs. Brown, and held this was ground for cancellation of the certificate, patent and deed. We are not unmindful of the rule that the respect due to a patent, the presumption that the preceding steps have been observed, and the importance of the stability of titles, demand that patents should be canceled only on proof which produces conviction. Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 S. Ct. 339, 59 L. Ed. 637; United States v. Hays, 35 F.(2d) 948, decided October 29, 1929, by this court. But a consideration of the evidence in this case leads us to conclude it meets this test.

Mrs. Brown, in an affidavit taken July 20, 1925, by Inspector Yoder, of the Interior Department, stated she had looked over the fence on this land with Mrs. McDonald, but

relied on her as to the erection and extent of the fence, claimed the McDonalds agreed to put up the fence necessary for proof, and she thought it was so constructed. The affidavit proceeded:

"I received several letters from Hugh Mc-Donald, stating that they would go as witnesses on the final proof and then buy the land for $700.00. This was before proof. They also agreed to pay the proof fees—but on date of proof said she did not have enough money to pay and said I would have to pay the fees. I intended no wrong—was misled by the McDonalds and even now will put up sufficient fence to complete the improvements."

At the trial, in October, 1928, Yoder testified that he wrote the questions and the answers in the affidavit, that Mrs. Brown read, signed, and swore to it. It was taken in the presence of her husband and witnessed by him. She denied reading it, and both claimed it was not correct or complete, and attributed the statement as to sale to representations of Yoder. She denied any agreement before final proof to sell the land. Her explanation was that she had letters from Mrs. McDonald stating they would furnish the improvements for $1.25 an acre and pay the final proof fees for a lease of the grass for three years, and that, after proof, if the heirs were willing to sell the land, she thought it would be worth $700. She claimed that later the grass lease was made in consideration of such improvements and fees.

Mrs. Brown also testified she wrote to the heirs concerning the proof; she and her brothers and sisters thought the expense of proof would be heavy, and she wrote the latter they could realize $100 each for the land after proof. No letters were produced. Mrs. McDonald testified to the same lease agreement, and denied any agreement before proof to buy the land. She admitted she had stated the land would be worth $700. She repaid the fees upon the final proof some time after it was given. She and her husband accompanied the claimant as witnesses when the proof was made. She paid the heirs $700 for the land. The deed was made to her later, and recited a consideration of $100 to each of the six heirs who joined in it. The other heir sold his interest previously for the like amount. The land was unimproved until 1924. The proof was due to the activity of the McDonalds, who had a ranch some four or five miles from this land, which had been grazed by stock owned by them and others.

All of the fencing was put on the land by and at the instance of the McDonalds.

The testimony is to the effect that Mrs. Brown took little interest in the fencing, had no accurate knowledge of it, and saw it only very shortly before final proof. The failure of Mrs. Brown to mention in her affidavit the agreement for the lease is certainly a significant fact, and, in the light of the admission there made, it impresses us as an afterthought. The facts and circumstances sufficiently convince us these parties in truth agreed, before the proof was made, the conveyance should be made of the land to Mrs. McDonald for $700.

Mrs. McDonald, assisted by her husband, built the fence on the west line of the land a distance of ¾ of a mile. The fence was extended ¼ mile north and ¼ mile east, bordering on the Doggett land, (the N.½ of the N.W.¼ of section 14), making a total of 1¼ miles. She claimed it was intended for the land in dispute. But there was testimony that she later was a witness in Doggett's final proof, crediting him with the fence upon his land.

Mrs. McDonald explained her testimony as to the remaining fence in this way: While she was building the west line fence, Mr. Holcomb, a homesteader of adjacent land on the west, then a stranger but now employed by the McDonalds, appeared and sought a trade to him of that one mile of fence for his final proof purposes, in consideration of the transfer of a fence on the south line of the Brain homestead, erected by Mr. Ballentyne, an adjacent proprietor on the south, which Holcomb claimed he acquired by allowing Ballentyne the use of a house or shanty. Mrs. McDonald referred the proposal to Mrs. Brown, who said it was immaterial to her and satisfactory. Thereafter the exchange was made on the terms that Holcomb was to have the west fence after Mrs. Brown made final proof. The deal for the south fence between Holcomb and Ballentyne is disputed. Holcomb testified to it. The witness Dedrick corroborated it to the extent he heard the bargain made between these parties. Ballentyne testified he built the south fence, never sold or traded it, never spoke to Holcomb about it, and still owns it. Holcomb did not make final proof; it does not appear he ever again made claim to the west fence, but the McDonalds have had the full benefit of it. His house appears to have been small and of little value. Ballentyne did occupy it a few months, but section men, Mexicans, and others did that occasionally. The

account of witness Gesche, the section foreman, was that he informed Ballentyne, when he applied for employment, he had no place for him; that Ballentyne said he and Holcomb were friendly homesteaders and he would move into the Holcomb house; and that Holcomb was not there at the time.

There was in fact only a fence of 1¾ miles on or about the Brain land, of which ¾ mile was built on the west by the McDonalds. It was necessary to include this ¾ mile, the Doggett fence of ½ mile on the north, and the Ballentyne fence of one mile on the south to make up the total of 2¼ miles as claimed in the final proof. If the Doggett fence be included (assuming it to have been built by honest mistake), and the Ballentyne fence be excluded, the total is 1¼ miles, which the evidence clearly shows was of far less value than $450, the statutory requirement of proof. The Ballentyne fence should be excluded, as the account of acquiring it is so unreasonable and so far refuted as to be unworthy of credit. It was, in substance, the taking of title thereto at once for transfer of title to the west fence after the Brain proof, at best not other than a colorable exchange for final proof purposes, and was intended as a device to effectuate a fraud upon the land officials to induce the issuance of the patent for this land. As the trial judge found, "It was a deception practiced on the Government."

The McDonalds were parties to the misrepresentations in the final proof, with regard to the fencing on this land. Mrs. McDonald was a party as to the agreement of sale. Mrs. Brown was also necessarily a party to both. Assuming she may have been imposed upon by the McDonalds as to the fencing, she was responsible for their acts, and the misrepresentation by them in that regard requires a cancellation of the patent. Besides, her dependence on them, if it is a fact as she claims, shows she was interested only in realizing on the land and confirms the charge that she had bargained it away. It is needless to add that Mrs. McDonald was not an innocent purchaser of the land.

There is a contention that the court erroneously excluded testimony offered to show some other improvement on the land, presumably put there by the McDonalds. But it was irrelevant in not being pleaded and in not being referred to in the assignments of error.

The proof in this case was amply sufficient to sustain the decree of the District Court, and that decree is accordingly affirmed.