## JOHNSON v. UNITED STATES.
### No. 403.

Circuit Court of Appeals, Tenth Circuit.
July 1, 1931.

E. J. Skeen, of Salt Lake City, Utah (J. D. Skeen, of Salt Lake City, Utah, on the brief), for appellant.

E. C. Jensen, Asst. U. S. Atty., of Salt Lake City, Utah (C. R. Hollingsworth, U. S. Atty., and George H. Lunt, Asst. U. S. Atty.,

both of Salt Lake City, Utah, on the brief), for the United States.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

This suit was brought by the United States to cancel patents granted to appellant for public lands, situated in Rich county, Utah, embraced in an original homestead entry made July 7, 1921, and an additional stock-raising homestead entry made January 27, 1923, in support of which final proofs were taken before the county clerk of that county and presented to the Salt Lake City land office in July, 1926. The final certificates were dated August 20, 1926, and the. patents July 12, 1927.

It was alleged in the bill and admitted in the answer that the final proof affidavits of the appellant and two witnesses were, in substance, that appellant had actually resided on the original homestead tract from May, 1921, to May, 1922; from May, 1923, to May, 1924; from May, 1924, to January 27, 1925; from May, 1925, to December, 1925; and from April 1, 1926, to date of final proof. It was further alleged that this showing was false and given with the purpose to deceive the officials of the local land office and the General Land Office, and they were induced thereby to issue the final certificates and patents. The answer denies the testimony was false or deceived the officials, and alleges it truthfully set out the facts and was given in good faith.

After a trial of the cause, the District Court found that the final proof affidavit of appellant, as well as those of his witnesses, was a fraud on the government with regard to his residence on the original homestead, that he resided with his neighbors, occasionally visiting the land and cultivating a portion of it, and ruled that the homestead law required an entryman, whether married or single, to maintain an actual home on the land, and that if appellant considered his acts as a single man satisfied the law, they were not truthfully represented. For this reason, it was decreed that the patents be cancelled. Appellant complains of these findings and the decree based upon them.

A statutory requirement was imposed of residence and cultivation upon the original homestead for three years, and compliance therewith was essential to the acquisition of the title to the stock-raising homestead. Act Dec. 29, 1916, 39 Stat. 862 (43 USCA § 291 et seq.); Act June 6, 1912, 37 Stat. 123 (43 USCA §§ 164, 169). It is a settled rule that a suit to cancel a patent may be sustained only by proof which produces conviction. Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 S. Ct. 339, 59 L. Ed. 637. And the matter of inquiry in the courts is not whether they would have accepted the final proofs, but whether the officers passing on them were misled by false representations. United States v. Bucher (C. C. A.) 15 F.(2d) 783; United States v. Peterson (C. C. A.) 34 F.(2d) 245; United States v. Paiz (C. C. A.) 293 F. 755; United States v. Hays (C. C. A.) 35 F.(2d) 948.

In the present case, it is not questioned that appellant improved the land by fencing, cultivation, and a habitable cabin. We refer to the evidence on the issue of residence and only so far as necessary to determine whether the findings are sustained.

Two of the witnesses who lived near the land rarely saw him there and never at night, but often saw him at neighboring ranches where he was employed, ate, and slept. One of his final proof witnesses justified his final proof testimony upon an understanding that a single man was not required to live on the land, and that it was satisfactory to work upon and improve it, from time to time.

In August, 1927, Inspector Keefe visited the land and did not find about the cabin the usual indicia of habitation. In an interview with appellant, the latter stated that in the years 1921 to 1925 he lived most of the time at Andrew Mattson's ranch, stayed on the homestead one or two nights a week during the summer months, worked for Mattson practically all the time after making .the entry, took his meals there, cooked at the house occasionally when there early in the morning, but usually when at work on the land carried his dinner with him, when harvesting stayed at the house over night, during the summer months went to his cabin once and occasionally twice a week, was there about ten nights, and after making final proof stored his furniture in a granary. He claimed he was told, as he was a single man, he didn't have to live on the homestead, but had to live within a radius of twenty miles.

Johnson's own account is that in 1921 he slept quite a bit on the land, ate there when at work and on some Sundays, took canned goods there to eat, was there practically every day, worked for the Mattsons staying there at night, once a day had to go up and keep the cattle from the garden, "maybe in

the morning, maybe run up in the evening, some evenings stick around," and "stayed over night several times"; in 1922 he was at the cabin every day, but spent most of the nights with Mattsons; and in 1923 he stayed at the cabin "maybe two or three nights a week," in taking care of this place. He explained that his need required him to work off the land, and it was a lonely place about a half a mile away; but he claimed it was his only home.

 The District Court was right in the interpretation of the homestead law as exacting of the entryman an actual residence on the original homestead, and as not being satisfied by merely colorable acts consisting mainly of occasional visits to the land. And the findings of the court from the evidence are amply sustained that appellant's final proof fraudulently represented that he maintained a residence on the land. We agree with the decision that the case would have been different if the facts had been truly disclosed to the officials in the final proofs, and had been accepted by them, for in that case the essential fraud in inducing their approval of the final proof would have been wanting. Instead, no intimation was given that the appellant in truth resided at the ranches of others and only visited the land and claimed that his pretense of residence was sufficient for him as a single man.

Appellant relies upon the Hays Case, where it appears a statement of the facts was made to the Commissioner before whom the proof was taken. An analogy is claimed from the reference of appellant's proof to the field inspector. It is true he "clear listed" the land, but this was after the proof was taken, there was no communication by appellant with him, and the inspector made no protest, because he noticed one Kearl, whom he knew, was a witness in the final proof. The practice appears to have been to refer the proofs to the chief inspector for an investigation and report by a field inspector. Such a report doubtless has some influence, but nevertheless a final proof is always passed upon by the land officials in the course of their duties, and it is a representation of facts on which the title is granted to an entryman.

 The findings of the trial court are to be accorded weight, in view of the favorable opportunity to estimate the testimony.

We are convinced there was no error in arriving at the facts in this case. The decree is accordingly affirmed.