**UNITED STATES v. DEMMON et al.**

**Civ. A. No. 338.**

District Court, D. Montana,

Great Falls Division.

April 16, 1947.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., for the United States.

Cedor B. Aronow, of Shelby, Mont., for defendants.

PRAY, District Judge.

This is an action to set aside and annul a patent issued to the above-named Bernard Demmon, now deceased, who, on or about the 18th of March, 1931, made and filed his application, 43 U.S.C.A. §§ 291–302, in the United States Land Office at Great Falls, Montana, serial number 076004, as an original stock-raising homestead entry on the lands described in the complaint in said cause. The application was for 640 acres, but the Register of the

Land Office later determined that only 560 acres were subject to entry. The law required the entryman to establish residence upon the lands within six months after date of entry, unless an extension of time should be granted for climatic reasons, illness, or other unavoidable causes; residence prescribed was for a period of three years; at time of proof entryman was required to show that he was a citizen of the United States and that he had made permanent improvements thereon tending to increase the value of said lands for stock raising purposes to a value of not less than $1.25 per acre; half of the improvements were to be placed on the lands within three years after date of entry; it was also necessary for entryman to show that he had fulfilled residence requirements and that the lands had been used for three years for raising stock and forage crops. Certain leaves of absence were granted the entryman, and later he was declared incompetent and Loretta Demmon, his mother, was appointed guardian, who together with two other witnesses, were allowed to make final proof, which was accepted, followed by the issuance of a final receipt, and later on a patent.

The complaint alleges that the affidavits, depositions and sworn statements of the final proof witnesses, and the affidavit by the guardian, and each of them, were false, fraudulent and untrue, and were so known to them and each of them, followed by other allegations of like tenor, as set forth in the complaint.

The answer, among other things, states: "These defendants above named allege that the proof made by Bernard Demmon and his witnesses is true and that there is no intent or attempt on the part of these defendants or the witnesses to the proof of Bernard Demmon, deceased, to falsify or defraud the Government of the United States, and that the allegations of the plaintiff's complaint in that respect are wholly and entirely denied and these defendants allege that the said Bernard Demmon, deceased, has fully complied with all the laws and statutes of the United States." The answer also shows that Le Roy Demmon and Loretta Demmon, are the father and mother of the entryman, residing at Shelby, Montana, and that Earl, Donald and Margaret Demmon, brothers and sister, are not within the state of Montana.

It is in evidence that one A. J. Moser purchased the land in question in October, 1945, for a consideration of $900; without knowledge of the pendency of the action herein; that he did not learn of this action until the 18th of December, 1946, when a subpoena was served upon him to appear as a witness for plaintiff herein. Counsel for defendants claim that no lis pendens was ever filed in this case, and that Moser was a bona fide purchaser for value, without notice or knowledge; that the purchase was made through F. A. Sullivan, described as the new administrator of the Bernard Demmon estate; that Moser was assured by him that the title was all right, and that "it had gone through court"; it appears that a decree of court distributing the estate of said deceased to his father and mother was entered therein. The deed to the said lands was given to Moser by the father and mother, only heirs of the deceased entryman, and was signed and acknowledged by them before a notary public at Vancouver, Washington. The evidence concerning this transaction is uncontradicted.

The evidence on the part of the entryman as to residence and improvements on the land was not satisfactory, but after considerable delay and further extension of time granted to comply with the law, the proof was accepted, as before noted. It appears that the extensions of time granted entryman were largely due to the handicap of a serious physical ailment.

A Government agent examined the premises in July, 1941, but that was more than ten years after the entryman had established his residence and about two years after patent had issued; in the meantime storms had partly destroyed the reservoir on his premises and injured his cabin, which had replaced a frame building first erected upon the land; the fencing on the land was said to have been placed there by somebody else, and doubt was cast upon the ownership of a sheep shed, which entryman claimed, and the panel corral, which entryman had used when

running sheep on his place, was gone, but on the whole the proof seemed to establish the fact conclusively that the entryman had not complied with the law either as to residence, cultivation or improvements.

Said Moser was called as a witness for the plaintiff and when he claimed to be an innocent purchaser for value, the court at the time, did not consider this line of testimony very seriously; he had been a resident of that section for 34 years and said he was familiar with the lands in question, but upon scrutinizing his statements in the transcript it appears that he had no definite information as to residence of entryman, or the nature of the improvements or the value thereof. There is no proof here that Moser had any knowledge of the final proof, or of the supporting witnesses, or of the affidavit of the mother as guardian or administratrix, or of anything that was done in that connection; or that he had any knowledge of the affidavits given the Government agent in 1941 by the father and mother of the deceased. It does appear that in 1941 Moser accompanied the Government agent to the land and his picture is here as an exhibit, taken beside the partly ruined cabin; he was called as a witness at the trial with the result before noted.

■ It appears from the evidence that Moser did not buy the lands until more than four years after this incident took place, and according to his statement had never heard anything further about it, or that any action was ever taken in the matter by the Government. Thus far the court would be inclined to rule in favor of the buyer and declare him an innocent purchaser who had paid full value for the property. But, it does not appear that Moser is in the case other than as a witness; he is not here as an interpleader, nor has counsel for the defendants alleged facts relating to the purchase in his answer. Counsel might have moved to amend the answer to include this defense. It has been held that the defense of a bona fide purchaser is an affirmative defense and must be specifically pleaded and proven by affirmative evidence. United States v. Bennett, 8 Cir., 296 F. 409; United States

v. Calcasieu Timber Co., 5 Cir., 236 F. 196. However, under Rule 15(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the court may permit an amendment at any time, even after judgment, so that the pleadings may conform to the proof; however, failure to amend does not affect the result of the trial of these issues.

■ The deed to Moser and the decree of distribution in the estate of the deceased entryman were received in evidence without objection, but testimony in respect to grantee being an innocent purchaser for value was objected to as immaterial and not illustrating any issue, but the objecting party made no claim that the admission of such evidence would prejudice him in maintaining his action upon the merits. No time or continuance was sought to enable the objecting party to meet such evidence. Under that rule: "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby * * *." Accordingly the court will enter an order allowing an amendment to the pleadings, by both parties to the action, to amend the title and conform to the proof. Under all of these circumstances and the lapse of so many years after entry and final proof and patent, and no action taken, so far as any knowledge of it came to the attention of Moser, it does not seem to the court that negligence could now be attributed to him for not making further inquiry. There is a presumption that all necessary steps had been taken before the patent issued. Wright-Blodgett Co. v. United States, 236 U.S. 397, 35 S.Ct. 339, 59 L.Ed. 637. The above decision affords a good illustration of the proof required by one who claims to be an innocent purchaser for value.

Another question to be considered relates to the affidavits of the father and mother of the entryman, which were introduced in evidence by the plaintiff; these were procured by the Government agent who testified at the trial; affiants were the sole heirs of the entryman and

one of them as guardian had taken part in the final proof proceedings and at a later date was appointed administratrix; they were made defendants in this action and were served with summons and copy of the complaint; neither of them appeared at the trial; they were both sued individually and as heirs of the estate, and Loretta Demmon as administratrix of the estate; the defendants in their answer have denied all allegations of fraud and deceit set forth in the complaint; the affidavits in question are in contradiction of the answer, and also contradict the final proof of entryman and his witnesses and that furnished by Loretta Demmon as guardian of the entryman; there is nothing in the evidence to show that the affidavits were not freely and voluntarily given. Evidence may be given of the act or declaration of a deceased person against his interest in respect to his real property. R.C.Montana 1935, Sec. 10531. The contents of these affidavits show that affiants were also making declarations against their own interests. Counsel for defendants objected to the introduction of these affidavits, citing Vol. 3 Jones on Evidence, Sec. 774 B and Sec. 776, but under Sec. 774, relating to the general scope of statutes and meaning of terms, the same author states: "The evidence of an adverse party is absolutely excluded by an independent, affirmative enactment making him incompetent as to transactions or communications with a deceased or incompetent person. These statutes, however, do not render the adverse party incompetent to testify to fraudulent transactions of the deceased, as the statutes are not designed to shield wrong-doers but the courts compel the adverse party to clearly establish the alleged fraudulent acts before admitting such testimony * * *."

These affidavits taken together, and considered in connection with other evidence in the case, would seem clearly to establish the fraudulent acts alleged in the complaint. The evidence as a whole is clear and convincing and indicates that the court should sustain the allegations of the complaint and cancel the patent, but where the evidence shows, as the court believes it does in this case, that the lands in question, subsequent to the issuance of patent, were sold and conveyed to an innocent purchaser for value, without notice or knowledge of the fraud charged by the Government, or of any fraud in connection with the entry, final proof or issuance of patent, then the court will not decree the cancellation of the patent under well established rules of law, supported by a long line of authorities.

The aforesaid amendments may be made, findings and conclusions submitted with form of judgment; also, exceptions are allowed counsel.