REMINGTON RAND, Inc. v. UNITED STATES et al.

THE SAMIDA.

No. 157, Docket 22563.

United States Court of Appeals Second Circuit.

Argued Feb. 4, 1953.

Decided Feb. 25, 1953.

Myles J. Lane, U. S. Atty., New York City, Edward L. Smith and William H. Postner, New York City, Attorneys, Department of Justice, for respondents-appellants.

Atkins & Weymar, New York City, William Weymar, Jr., New York City, for John T. Clark & Son, respondent-impleaded-appellee.

Dow & Symmers, New York City, Wilbur E. Dow, Jr. and Francis J. O'Brien, New York City, for McRoberts Protective Agency, Inc., respondent-impleaded-appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Remington Rand, Inc., assignee of a bill of lading issued by Norton, Lilly & Company as agents of the Master of the S. S. Samida, brought this suit for failure to deliver certain goods at the port of destination. The United States defended the suit on the ground that it had assumed any liability of the British Government therefor as part of its lend lease service. The carrying ship, the S. S. Samida, was operated by the British Ministry of War Transport under a lend lease bareboat charter. The Peninsular & Oriental Steam Navigation Company was appointed the vessel's general agent; The Ellerman & Bucknall Steamship Company was the berth agent. Norton, Lilly & Company, acting as New York representative of the berth agent, accepted delivery of the cargo at the pier. The United States admitted for the purposes of this litigation that it was the carrier, and also entered into a stipulation agreeing to pay any final decree entered against Ellerman & Bucknall Steamship Company (hereinafter referred to as "Ellerman"). The proceedings against parties other than Ellerman and the United States were discontinued or dismissed. The United States impleaded McRoberts Protective Agency, Inc. (hereinafter referred to as "McRoberts") and John T. Clark & Son (hereinafter referred to as "Clark"). On appeal the United States contends that the district court erred in denying recovery over against the two impleaded respondents.

The cargo in question, consisting of calculating machines, was found by the district court to have been stolen some time after having been loaded on board The Samida at New York and before the vessel had left port. McRoberts was engaged to furnish guards for the cargo under a contract between it and Ellerman which provided for a "guarantee against loss by theft only while their men are in charge." The district court held that the United States had failed to prove that McRoberts' employees were on duty when the theft occurred and hence that there was no liability under the contract. The government argues that a bill "To services rendered guarding outward cargo" establishes that McRoberts attempted to guard the cargo at all times and consequently was "in charge" at all times. However, a second bill "to services rendered guarding hatches" was paid, and the lower court's construction of the bill for guarding outward cargo as limited to an undertaking to guard the cargo only while on the pier is not clearly erroneous. One of the witnesses called by the United States

testified on the meaning of this bill as follows:

"Q. What services does that cover, pertaining to the guards? A. Guarding the vessel on the pier—the cargo on the pier.

\* \* \* \* \* \*

"A. Yes, your Honor. This bill, if I may clarify it, covers the entire cargo accepted for the vessel. The other bill refers to guarding the hatches on the vessel. This is the pier bill, and the other is the ship's bill.

"Q. You mean they got a flat rate per ton for all the cargo that comes on the pier? A. That is right.

"Q. Then in addition they made a specific charge for their men who guard the hatches? A. Yes sir."

Transcript of Record, pp. 122–3.

■ In view of the above evidence, the fact that the bill for guarding outward cargo was rendered on a basis of the total tonnage and that for a large part of the time much of the cargo was on the ship does not necessarily establish that McRoberts was "in charge" not merely while the cargo was on the pier but also while it was on the ship. The rate for guarding each ton may well have been based on a calculation of how many watchmen were required effectively to guard the cargo only while it was on the pier. Since the theft occurred after the cargo was loaded on the ship, and McRoberts was not "in charge" of the cargo on the ship at all times, as evidenced by the hours charged for in the bill for guarding the hatches, the court below did not err in holding that the United States had failed to meet its burden of proof. In The Dimitrios Chandris, D.C.E.D.Pa., 43 F.Supp. 829, affirmed, 3 Cir., 133 F.2d 124, relied on by the United States, the escape of the alien seaman occurred while the watchmen were on duty.

■ The government further argues that a contrary result should have been reached on the evidence because the burden of proof rested with McRoberts, who failed to establish that it was not "in charge." But the United States assumed the burden of proof in the court below. At the opening of the trial, counsel stated: "I expect either by putting in the documents or possibly by proof to show that McRoberts Protective Agency was on both the pier and ship 24 hours a day while these cases were there. That is our case, your Honor." Transcript of Record, p. 58. Having assumed the burden of proof in the trial of the case, the United States may not on appeal take a contrary position. Spokane Interstate Fair Assoc. v. Fidelity & Deposit Co., 9 Cir., 15 F.2d 48; United States v. Peterson, 10 Cir., 34 F.2d 245, 249, 250; Kentucky Vermillion M. & C. Co. v. Norwich Union Fire Ins. Soc., 9 Cir., 146 F. 695, 702. A party may not secure a reversal resulting in prolonging the litigation by reliance upon an error for which it was responsible.

■ The United States also urges that the court below erred in holding that the burden of proving the liability of Clark, whose stevedores loaded the cargo, was not met. The alleged liability is based on a contract between Clark and the War Shipping Administration providing: "Liability of Stevedores: While performing the work the stevedores shall \* \* \* be responsible for any and all loss \* \* \* to \* \* cargo \* \* \* arising through the negligence or fault of the stevedores, its employees \* \* \*" Transcript of Record, p. 32. The district court correctly concluded that, if the machines were stolen by a longshoreman in Clark's employ, Clark would be liable for the theft. But it was held that this fact was not sufficiently proved. Although a contrary conclusion may have been possible, we do not believe that this finding was clearly erroneous. The only positive evidence to support the United States' allegations was that one Claus, previously convicted of having the stolen machines in his possession, had at one time identified a person meeting the description of one Adinolfi, an employee of Clark, as having sold the machines to him. At the trial Adinolfi denied any connection with Claus. The latter asserted that he did not know Adinolfi and that he could not remember where he had obtained the machines. Therefore, there was in the end positive testimony that Adinolfi had had no connection with the stolen machines and the

trier of facts regarded this as justifying the finding which he finally made. We cannot say that the testimony was without sufficient substance to support the holding. Although the court stated, "after hearing the testimony of Adinolfi there is grave suspicion that Claus in fact did obtain these machines from Adinolfi," we do not see that, as the government seems to contend, the court applied the criminal standard of proof beyond a reasonable doubt.

The decree is affirmed.